1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| 10 | RICHARD CHARLES BUCHANAN, | ) Civil No. 10cv423 BTM (NLS) |

RICHARD CHARLES BUCHANAN,                    )    Civil No. 10cv423 BTM (NLS)
                                             )
                  Petitioner,                )    ORDER DENYING MOTION FOR
v.                                           )    DISCOVERY [Docket No. 53];GRANTING
                                             )    IN PART AND DENYING IN PART
MATTHEW CATE, Secretary; and                 )    MOTION FOR JUDICIAL NOTICE
EDMUND G. BROWN, JR., the Attorney           )    [Docket No. 60]; DENYING MOTION
General of the State of California,          )    FOR SANCTIONS [Docket No. 61];
                                             )    DENYING MOTION TO COMPEL
                  Respondents.               )    RESPONDENT TO COMPLY WITH
                                             )    ORDER [Docket No. 63]; GRANTING
                                             )    MOTION FOR JUDICIAL NOTICE
                                             )    [Docket No. 64.] AND REQUIRING
                                             )    SUPPLEMENTAL LODGMENTS

## I.    INTRODUCTION

### A.    Procedural Background

On February 22, 2010, Petitioner Richard Charles Buchanan ("Petitioner"), a state  prisoner proceeding *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is a California prisoner serving a term of forty-five years to life plus ten years who is challenging his convictions for kidnapping for extortion, assault with a semi-automatic firearm, making a criminal threat, being a felon in possession of a firearm, transportation of a controlled substance, possession of a controlled substance for sale, and possession of a controlled substance.  (Lodgment 7 at 1-2.)

On February 22, 2010, Petitioner filed a Petition for Writ of Habeas Corpus.  [Docket No. 1.] On December 9, 2010, Petitioner filed the First Amended Petition ("FAP"), the active pleading in this case.  [Docket No. 40.]  On the same day, Petitioner moved to have exhibits from his original Petition

attached to the FAP and that motion was granted on December 14, 2010.  [Docket No. 43.]  On March 9,

2011, Respondent filed an Answer to the FAP.[1]  [Docket No. 51.]  On March 24, 2011, Petitioner filed a

Motion for Discovery [Docket No. 53.]  On or about April 28, 2011, Petitioner filed a motion for

Judicial Notice [Docket No. 60], a Motion for Sanctions [Docket No. 61], and a Motion to Compel

Respondent to Comply with Order [Docket No. 63.]  On May 9, 2011, Petitioner filed a Second Motion

for Judicial Notice.  The Court will address each of these motions in turn.

**B.     Grounds Asserted in the FAP**

Petitioner asserts 11 claims in his petition:  (1) the prosecutor used perjured testimony to obtain

the conviction, in violation of Petitioner's rights to a fair trial and due process; (2) there was no probable

cause or reasonable suspicion of criminal activity to support the detention of Petitioner's vehicle, in

violation of Petitioner's right to be free of unreasonable searches and seizures; (3) the conviction was

based on false wiretap evidence; (4) the state failed to disclose "Brady" evidence that it had in its

possession; (5) judicial bias contributed to Petitioner's conviction, denying him of his due process and

fair trial rights; (6) the excessive security imposed on Petitioner at trial was not reasonably necessary;

(7) the conviction was obtained based on prosecutorial misconduct; (8) the scope of the expert gang

evidence and expert opinion admitted was prejudicially erroneous, and/or defense counsel was

ineffective in failing to object to the scope of the expert testimony; (9) counsel was ineffective based on

a number of acts and omissions that deprived Petitioner of his sixth amendment right to counsel and

right to a fair trial;  (10) Appellate Counsel was ineffective for failing to raise Grounds 1-7 and 11 on

direct appeal; and (11) the sentencing court exceeded its authority in imposing $10,000 fine of

restitution.  First Amended Pet'n at 6-9.[2]

//

//

---

[1]Petitioner named Edmund G Brown, Jr, former Attorney General of the State of California and Matthew Cate, Secretary of the California Department of Corrections and Rehabilitation, as Respondents.  In the Answer, submitted on behalf of Mr. Cate, Respondent claims that Mr. Brown is not a proper Respondent because he is the former Attorney General and because the Attorney General is only a proper respondent if the petitioner is not yet in custody, and may be subject to future custody. Even though Mr. Brown remains a Respondent at this time, for convenience the Court will use the term "Respondent."

[2]The First Amended Petition contains eight pages numbered  "9 (1 of 8)", "9 (2 of 8)" etc.

### C.    Factual Background

In July of 2004, a cooperating witness with the FBI gave Petitioner, a validated member or "Big Homie" of the Mexican Mafia, a cell phone with a wiretap in it. (California Court of Appeals Order Denial of Habeas Petition, Lodgement 7 at 3.)  Rodney Brooks, an associate of the Mexican Mafia incarcerated at Donovan, was also given a cell phone with a wiretap in it. (*Id*.)  Jessica Chavez was a correctional officer at Donovan State Prison ("Donovan") (*Id.* at 4.)  Ernesto "Triste" Torres was an inmate at Donovon.  (*Id*.)  After Torres  was released in May of 2004, he began a sexual relationship with Jessica Chavez.  (*Id*.)  After the relationship soured, Petitioner and Brooks were recorded on phone conversations directing Torres to stop contacting Chavez because she was the connection to doing business at Donovan.  (*Id*. at 5.) Because of the threats recorded against Torres, the police set up surveillance of Chavez's residence and were aware that Torres was in a car with Petitioner and another associate, Parraz.  (Lodgement 27 at 74-77.)  Officer McGivor of the San Diego County Violent Crimes Task Force contacted Officer Javier Nunez, who was in a marked patrol unit, and asked him to stop the vehicle because they were afraid that Petitioner would kill Torres.  (Lodgment 7 at 7, Lodgment 27 at 34-36)**.**  Officer Nunez stopped the car.  In order to avoid revealing the existence of the wiretap to Petitioner, Officer Nunez told Petitioner that the car had been stopped due to their belief that a parolee at large was in the vehicle.  (Lodgment 27 at 35.)

At the original criminal trial, Petitioner moved to suppress all evidence arising out of the traffic stop, arguing that the police had no reasonable suspicion to stop the car.  (Lodgment 27 at 124-25.) Officers Nunez and McGivor testified at the hearing.  (Lodgment 27 at 32-122.)  The Court found that the evidence collected from the wiretaps provided sufficient probable cause to stop the car and denied the Motion to Suppress.  (*Id*. at 128-130.)

## II.    DISCUSSION

### A.    First Motion For Judicial Notice

On April 28, 2011, Petitioner filed a Motion for Judicial Notice asking the Court to take judicial notice of three facts: 1)  two differently paginated sets of Official Court Reporter's Transcript exist for his trial, Case Number SCS187166 ( the "Transcript");  2)  Petitioner had previously raised the possibility of multiple versions of the Transcript; and 3) Respondent did not notify the Court of the

1  existence of the discrepancy.

2      Federal Rule of Evidence 201 allows a court to take judicial notice of a fact "not subject to

3  reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial

4  court, or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot

5  reasonably be questioned." Fed. R. Evid. 201(b).  Additionally, a " court shall take judicial notice if

6  requested by a party and supplied with the necessary information.  Fed. R. Evid. 201(c).  Judicial notice,

7  however, is inappropriate where the facts to be noticed are irrelevant.  *Ruiz v. City of Santa Maria*, 160

8  F.3d 543, 548  n. 13 (9th Cir.1998); *Turnacliff v. Westly*, 546 F.3d 1113, 1120  n. 4 (9th Cir. 2008.)

9      Petitioner asks the Court to take judicial notice of the fact that he has in his possession an

10  Official Court Reporter's Transcript in Case Number 187166 that is paginated differently from the

11  Official Court Reporter's Transcript  found at Lodgement Numbers 25-36.  Petitioner explains that he

12  received his copy of the Transcript "piecemeal" from Rodney Brooks, a co-defendant who was severed

13  from the case prior to trial.  (Decl. ISO Mtn for Judicial Notice at ¶ 4.)  On March 30, 2011, Petitioner

14  filed a Motion for Order to Provide Petitioner Copy of Respondents' Lodgment Items 21-36. [Docket

15  No. 54.]  On April 5, 2011, the Court granted Petitioner's motion and ordered  Respondent to serve  the

16  lodgement items and file a proof of service.  [Docket No. 55.]  On April 8, 2011, Respondent filed a

17  proof of service confirming the delivery of the lodgment items to Petitioner.  [Docket No. 56.]

18  Petitioner admits receiving the Lodgment items on April 5, 2011.  (Decl. ISO Mtn for Judicial Notice ¶

19  14.)

20      A review of the evidence verifies that Petitioner does possess a copy of the Transcript that is

21  paginated differently from Lodgments 25-36.  The Court has compared Exhibit 4 of the FAP with

22  Lodgment 27 and finds that the pagination is indeed different despite the fact that both documents are

23  entitled "Reporter's Transcript" for February 28, 2006.  There are, however, some differences.

24  Lodgment 27  has an additional cover page  entitled "Reporter's Transcript on Appeal; February 28,

25  2006; Volume 3 Pages 30-195 (196-211 Sealed.)"  The next page in Lodgment 27, also a cover page,

26  contains the notation "Volume 3" and the testimony starts on page 30.  In Exhibit 4, there is no reference

27  //

28  //

to a volume 3 and the testimony begins on page 1."[3]  The reason for this difference appears to be that the copy that Petitioner obtained from Mr. Brooks contains only those transcripts which concern Mr. Brooks whereas Lodgments 25-36 contain all transcripts relating to Petitioner.  For example, Lodgments 25 and 26 (transcript pages 1-29) did not involve Mr. Brooks and may have been excluded in the Official Reporter's Transcript prepared for Mr. Brooks.  This would explain why the Brooks version of the transcript starts at page 1 on  February 28, 2006 whereas Lodgement 27 is volume 3 and starts at page 30.  Thus, the fact that the Brooks set of the Reporter's Transcript is paginated differently than the Lodgments 25-36 in this case is capable of accurate and ready determination by resort to the official documents on file in this case.  Similarly, a review of the FAP  reveals that Petitioner did raise the possibility of conflicting transcripts at page  9 (6 of 8) in relation to Ground 9.  Petitioner asserted that his appellate counsel cited to the wrong pages of the Transcript.  Moreover, this fact may be relevant to explain why Petitioner's citations to evidence have been inaccurate prior to his receiving the correct Reporters Transcript for his case.

Accordingly, the Court Grants in Part Petitioner's Motion to take judicial notice as to the fact that two transcripts exist (one for Mr. Brooks and one for Petitioner) and the fact that Petitioner had raised this possibility previously in this case.  The Court Denies the motion as to the fact that Respondent failed to notify the court as of the discrepancy.  The Court is aware of no duty on the part of Respondent to investigate the reasons for Petitioner's incorrect citation of evidence and finds this fact is not relevant to any issue in the Petition.

**B.     Second Motion For Judicial Notice**

On May 9, 2011, Petitioner filed a Motion for Judicial Notice of Written Error.  [Docket No. 64.] On April 29, 2011, Petitioner filed  a Motion to Compel [Docket No. 63.]  On page 14 of the Motion to Compel, Petitioner wrote on the first line "NOTED AT #2 of Page Two of Motion."  Petitioner intended to write "NOTED AT # 2 of Page Three of the Motion.  The fact that Petitioner wrote the wrong number in his motion is not suitable for Judicial Notice because it is neither generally known nor capable of accurate and ready determination.  Accordingly, the Motion for Judicial Notice is DENIED.  The Court,

---

[3]The copy lodged with the court actually starts on page 2, which corresponds to page 31 of Lodgment 27.

10cv423 BTM (NLS)

1   however, has no reason to doubt that an error in writing occurred and hereby Orders the Clerk of Court

2   to substitute corrected page 14 as attached to Docket Number 64 for the original page 14 in the Motion

3   to Compel [Docket No. 63.]

4            **C.    Motion to Compel Respondent to Comply with Order**

5            On April 29, 2011, Petitioner filed a Motion to Compel Respondent to Comply with Order to

6   Provide All Records.  [Docket No. 63.]  Petitioner claims that Respondent has failed to comply with this

7   Court's Order dated September 15, 2010 entitled "Order Requiring Response to Petition" [Docket No.

8   29.]  The Order required: "At the time the answer is filed, Respondent shall lodge with the Court all

9   records bearing on the merits of Petitioner's claims."  Petitioner asserts that Respondent did not comply

10  with this directive because it did not lodge: 1) wiretap or other evidence that supports Detective

11  McGivor's testimony at the original criminal trial (which Petitioner claims was false); 2) Records

12  relating to the two Marsden[4] motion hearings on February 28, 2006 and March 24, 2006; and 3) The

13  Clerk's transcript in the prosecution of severed co-defendant Rodney Brooks.

14            1.    Requirement to Lodge Records is Limited

15           The Court ordered Respondent to respond to the Habeas Petition and to "lodge with the Court all

16  records bearing on the merits of Petitioner's claims."  This requirement is based on Rule 5 of the Rules

17  Governing Habeas Petitions, which states: "The respondent must attach to the answer parts of the

18  transcript that the respondent considers relevant."  Rules Governing § 2254 Cases, Rule 5(c), 28

19  U.S.C.A. foll. § 2254.  Rule 5(d) requires the respondent to lodge briefs and orders of the appellate

20  courts relating to the conviction or sentence.  Accordingly, "Records" in this context means official

21  transcripts which the **Respondent** considers relevant as well as briefs, and opinions filed with the court

22  as part of Petitioner's trial and appeals.  "Records" does not mean any evidence that Petitioner believes

23  may be relevant to his case.  Accordingly, evidence supporting testimony given at the original trial does

24  not fall within the Court's Order.  Similarly, the transcript of another criminal proceeding does not fall

25  within the court's order.

26

27           [4]A Marsden hearing is a state court proceeding in which a criminal defendant with appointed
     counsel argues that the attorney appointed not providing adequate representation and requests the
28   appointment of new counsel.  *People v. Marsden*, 2 Cal.3d 118 (1970).

While the Marsden transcripts may be relevant, Respondent cannot be faulted for failing to lodge the transcripts because a Marsden hearing transcript "must be kept confidential." Rule 8.328(b)(1) of the California Rules of Court. The state must have a court order to obtain a copy. Rule 8.328 (b)(6). At this time, the Court is aware of no evidence that indicates Respondent is in possession of the sealed Marsden Transcripts. Accordingly, Respondent in no way failed to comply with the court's order to lodge records.

### 2. Marsden Hearing Transcripts Should Be Lodged

In light of Petitioner's *pro se* status, the court will construe this part of the motion to be a request for Discovery. Petitioner raises as Ground 9 in his Petition Ineffective Assistance of his trial counsel. Accordingly, the Marsden transcripts might be relevant to the Petition. Under Rule 5(c) "The judge may order that the respondent furnish other parts of existing transcripts or that parts of untranscribed recordings be transcribed and furnished. If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence."

Having considered Petitioner's request for additional transcripts, the Court finds that the Marsden hearing transcripts may be relevant and orders Respondent to Lodge the transcripts with the court no later than 2 weeks after the filing date of this Order. If the transcripts cannot be lodged, Respondent shall file a declaration under penalty of perjury explaining the efforts made to locate the transcripts and that the efforts were unsuccessful.

### 3. Respondent's Answer Is Sufficient

Petitioner asks this Court to Order the Respondent to refer to the exhibits attached to the FAP. On December 13, 2010, the Court granted Petitioner's motion to attach exhibits filed with his prior Petition to the FAP. [Docket No. 43.] Petitioner contends that Respondent has failed to consider the exhibits ordered attached by the Court. The only example cited, however, is that Respondent asserts that there is no Exhibit 6, which Petitioner calls "TAC 3." (Answer at 9 n.3.) In the Answer, Respondent points out that the transcript of TAC 3 is attached as Exhibit 3 to Lodgment 19, Petitioner's Reply to Respondent's answer in the State Appellate Court Habeas Petition. Respondent then argues that the TAC 3 does not support Petitioner's case. Accordingly, Petitioner has pointed to no examples where Respondent has failed to address relevant exhibits and the Court declines to Order the

Respondent to respond to unidentified exhibits in the FAP.

### 4. The Lodgment May Need Supplementation

In the Answer, Respondent asserts that Petitioner failed to include Exhibit 6.  Petitioner is referring to Exhibit 6 to Attachment F from Lodgment 12, Petitioner's State Appellate Habeas Petition, which the Court ordered attached to the FAP.  The index to Attachment F indicates there are 24 exhibits and that exhibit 6 is the "TAC 3" transcript.  The copy lodged with the Court only contains 5 attachments and appears to contain only part of Exhibit 5.  Thus, it  appears that the record from the State Appellate Habeas Petition may be incomplete.  As it is Respondent's duty to lodge complete Transcripts and Exhibits from the state habeas proceedings, Respondent is ORDERED to lodge a complete copy of Lodgment Number 12 or submit a declaration explaining why it is not possible to obtain and lodge a complete copy.

### 5. Miscellaneous Requests in the Motion

Petitioner also asks this Court to require Respondent to acquire the Reporter's Transcript that he has mistakenly used in preparing his habeas petition;  to provide this Court and the Petitioner with a copy;  and to require Respondent and the Court to use this wrong copy in all further proceedings.  The Court declines to order everyone to use the wrong transcript.  Respondent has lodged the correct Reporter's Transcript with this court and served the correct Reporter's Transcript on Petitioner.  Petitioner is entitled to no more.

Petitioner also asks this court to force Respondent to lodge a copy of the transcript of Petitioner's Preliminary Examination Hearing.  The transcript of the Preliminary Examination Hearing is already attached to the FAP as Exhibit 3 and contained within Lodgment 12.  Accordingly, Petitioner's Request is Denied.

Petitioner also asks the Court to have Respondent recognize various statements in the FAP as being signed under penalty of perjury.  As Petitioner points out, the FAP is signed under penalty of perjury.  The Court is not aware of Respondent issuing any challenge to the declaration that the FAP is signed under penalty of perjury.  Accordingly, the request is DENIED.

Finally, Petitioner asks the Court to require Respondent to acquire a copy of any existing audio records of any proceeding in this case.  Petitioner is seeking an audiotape of the suppression hearing on

February 28, 2006.  The transcript of this hearing is Lodgement 27.  Petitioner claims to need the audiotapes to prove that the trial judge, before going on the record after a lunch break, stated:  "Well, it's obvious to me that no kidnapping occurred."  Petitioner claims to need the tapes because this alleged statement is not part of the transcript.  As described above, the Order requiring lodging of records did not include hypothetical audio tapes.  Even construing this request as a request for discovery, the court can perceive no relevance to the alleged statement.  Even assuming that the statement was made, it is not probative of any issue in this case and the request is Denied.

### D.     Motion for Sanctions

On April 28, 2011, Petitioner filed a Motion for Sanctions [Docket No. 61.]  Petitioner asks the Court to sanction Respondent for failing to comply with the Order Requiring Response to Habeas Petition. [Docket No. 29.]  Petitioner seeks sanctions under Civil Local Rule 83.1, which provides:

> Failure of counsel or of any party to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court may be ground for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions.

Civ. L.R. 83.1(a).  As discussed above, Respondent did not fail to comply with any court order.  Accordingly, no sanctions can be imposed under Civil Local Rule 83.1.

Petitioner also seeks sanctions under Rule 11 of the Federal Rules of Civil Procedure.  "Rule 11 imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose."  *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir.1994).  " Rule 11 is governed by an objective standard of reasonableness.  *See, e.g.*, *Conn v. CSO Borjorquez*, 967 F.2d 1418, 1420 (9th Cir.1992); *see also Schutts v. Bently Nevada Corp.*, 966 F. Supp. 1549, 1562 (D. Nev.1997) ("[t]he issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded."), *citing In re Keegan Management Co. Sec. Litig.*, 78 F.3d 431, 434 (9th Cir.1996).

Moreover, Rule 11 requires a "safe-harbor" period and a motion for sanctions may not be filed

1   with the court until after it has been served on the opposing party who must then be given 21 days from

2   service of the motion within which to correct the defect.  Fed R. Civ. P. 11(c)(2).  The safe-harbor

3   period is mandatory.  *Truesdell v. Southern California Premanente Medical Group*, 293 F.3d 1146,

4   1152 (9th Cir. 2002).  In this case, there is no evidence that Petitioner complied with this mandatory

5   requirement.

6          Moreover, even if this requirement were met, Petitioner has not made any showing that sanctions

7   are warranted.  Petitioner asks this Court to sanction Respondent for lodging the correct Reporter's

8   Transcript instead of the Reporter's Transcript that was prepared for Mr. Brooks.  There can be no

9   sanction for filing the correct transcript.  Petitioner also appears to be asserting that Respondent should

10  be sanctioned for failing to inform the Court and the Petitioner that it filed the correct transcript instead

11  of the incorrect transcript that had been used by Petitioner.  Respondent is under no duty to investigate

12  Petitioner's failure to cite correct page numbers of the transcript and there is no evidence to suggest that

13  Respondent had knowledge that Petitioner had an incorrectly paginated version of the Reporter's

14  Transcript.  Moreover, even if Respondent knew that Petitioner had an incorrect copy of the Reporter's

15  Transcript, it cannot be sanctioned for failing to inform the Petitioner or the Court of Petitioner's mistake

16  because there is no false pleading or pleading filed for an improper purpose.

17         Similarly, Petitioner seeks Rule 11 sanctions for Respondent's failure to file the transcripts from

18  the suppression hearing, the two Marsden hearings, Transcripts from the proceedings involving only Mr.

19  Brooks, and other, undefined, records.  Petitioner appears to be aggrieved that Respondent lodged only

20  the Clerk's and Reporter's Transcripts of his own case.  In fact, Respondent also lodged all briefs and

21  opinions from the direct and collateral appeals that preceded this federal habeas case, including the

22  transcript of the suppression hearing (Lodgement 27).  As discussed above, the Respondent was only

23  responsible for filing official records that it believed were relevant.  Respondent has done so and no

24  sanctions are appropriate.

25         Finally, Petitioner asserts that Rule 11 sanctions are warranted for Respondent's failure to

26  address the evidence in the exhibits to the FAP.  As discussed above, Petitioner provides no examples

27  other than footnote 3 at page 9 of the Answer where Respondent does address the exhibit cited  by

28  Petitioner.  Accordingly, no sanctions are warranted.

**E.      Motion for Preliminary Discovery**

Petitioner moves for the following discovery related to Mr. Torres, the victim in the kidnaping charge for which Petitioner was convicted:  1) information about the existence of a wiretap on Ernesto Torres; 2) a copy of an up to date "Parolee Detail Record" for Mr. Torres; and 3) a copy of the records of the Parole Agent assigned to Mr. Torres.  (Mtn at 1-3.)  Petitioner explains that he is seeking this discovery in order to show that the police had knowledge of the identity and location of Mr. Torres prior to the allegedly illegal stop of Petitioner's vehicle that led to Petitioner's conviction.

           1.      Legal Standard

There is no right to discovery in habeas cases.  *Bracy v. Bramley*, 520 U.S. 899, 904 (1997); *Bittaker v. Woodford*, 331 F.3d 715., 728 (9th Cir. 2003).  In a habeas case, discovery is available "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."  Rules Governing Section 2254 Cases in the United States District Courts, Rule 6(a).  Petitioner must present specific factual allegations that demonstrate that there is good reason to believe that the Petitioner may, through discovery, be able to gather sufficient evidence to entitle him to relief.  *Bracy*, 520 U.S. 908-09.  "Before addressing whether petitioner is entitled to discovery under [Rule 6] to support his . . . claim, we must first identify the 'essential elements' of that claim."  *Bracy*, 520 U.S. at 904, *citing United States v. Armstrong*, 517 U.S. 456, 468 (1996)).  However, "[u]nless the petition itself passes scrutiny, there would be no basis to require the state to respond to discovery requests."  *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987).

Moreover, "any right to federal discovery presupposes the presentation of an unexhausted federal claim, because a federal habeas petitioner is required to exhaust available state remedies as to each of the grounds raised in the petition."  *Calderon v. U.S. District Court*, 98 F.3d 1102, 1106 (9th Cir. 1996).  Additionally, discovery is not available for claims that are procedurally barred.  *Sherman v. McDaniel*, 333 F.Supp.2d 960, 969-70 (D.Nev. Aug 30, 2004); *see also Rucker v. Norris*, 563 F.3d 766, 771  (8th Cir. 2009) (Petitioner denied discovery because no procedurally barred claim can demonstrate good reason to believe entitlement to relief.)  Similarly, if a claim is not cognizable under federal habeas law, no discovery is appropriate.  *Rahtbun v. Prosper*, 2010 WL 796977 at * 14 (E.D. Cal. March 5, 2010); *See also Perez v. Ercole*, 2010 WL 5475649 (E.D.N.Y. Dec. 30, 2010)(finding discovery

1    inappropriate for fourth amendment claim because it is not cognizable on federal habeas)

2         Petitioner does not identify the grounds in his Petition to which he believes the discovery sought

3    is relevant.  The Court has reviewed the Petition and concludes that evidence relating to knowledge of

4    the location of Torres prior to the investigatory stop of Petitioner's car is potentially relevant to Ground

5    2, that the traffic stop violated his Fourth Amendment rights.  It is also possibly relevant to Ground 4,

6    the alleged failure to turn over exculpatory evidence.

7                   2.      Ground 2, Violation of Fourth Amendment Rights

8                        a.      Claim Is Not Cognizable

9         Petitioner's claim for violation of his Fourth Amendment rights  "is not cognizable in federal

10   habeas proceedings if a petitioner has had a full and fair opportunity to litigate the claim in state court."

11   *Ortiz-Sandoval v. Gomez*, 81 F.3d 891 (9th Cir. 1996), *citing  Stone v. Powell*, 428 U.S. 465, 481-82

12   (1976).  Here, it appears that Petitioner had a full and fair opportunity to litigate this claim in state court.

13   Petitioner brought a motion to suppress the evidence and a judge held an evidentiary hearing on the

14   motion.  [Lodgement 27 at33- 138.]  Thus, there can be no good reason to believe that Petitioner may

15   gather evidence through discovery sufficient to entitle him to relief.

16                        b.      Claim is Barred by Failure to Raise Claim on Direct Appeal

17        Respondent also opposes the request for discovery on the basis that Ground 2 is procedurally

18   barred because Petitioner  failed to raise the issues on direct appeal.  *In re Dixon*, 41 Cal.2d 756 (1953).

19   A review of Petitioner's opening brief on direct appeal shows that Petitioner raised issues as to the

20   admittance of expert gang evidence, the admittance of lay testimony on gang involvement, and

21   ineffective assistance of counsel.  [Lodgment 1.]  The brief contains no allegations that the traffic stop

22   was illegal.  Additionally, the FAP shows that Petitioner did not raise these issues on direct appeal. FAP

23   at 7 (stating that grounds were raised in "Petition for Review, Case Number S183603, the case number

24   for the habeas petition to the California Supreme Court.)

25        Because this claim appears to be procedurally barred, Petitioner has failed to demonstrate good

26   reason to believe the discovery is likely to result in evidence showing Petitioner is entitled to relief.

27   //

28   //

c.      Traffic Stop Supported by Independent Ground

Even if the Fourth Amendment claim were cognizable, discovery would still be unwarranted. Even assuming Petitioner could prove that the police knew the location of Torres, it would not render the traffic stop illegal.  As the trial court found, the evidence from the wiretapped phones led the police to believe that Torres' life was in danger and this belief formed the probable cause necessary to stop the car.  [Lodgment 27 at 128-132.]  Accordingly, evidence related to whether the asserted justification of looking for a parolee at large was false is not relevant.

3.      Ground 4 Failure to Turn Over Exculpatory Evidence

As discussed above, no good cause can be shown for discovery related to claims that are barred. Also as discussed above, Petitioner did not raise this claim in his direct appeal.  (Lodgment 1); *see also* FAP at 9.  Accordingly, this claim is barred under *In re Dixon*, 41 Cal.2d 756 (1953) and there can be no good cause for discovery on this ground.

Based on a review of the issues raised in the Petition and the answer, as well as the applicable standards of review, there is nothing to indicate that it is necessary for petitioner to obtain the discovery he seeks from Respondent in order to present his case to this Court for review.  Therefore, this Court finds that Petitioner's Application must be DENIED because petitioner has not established good cause "to invoke the processes of discovery available under the Federal Rules of Civil Procedure."  Rules Governing § 2254 Cases, Rule 6, 28 U.S.C.A. foll. § 2254 (West 2004).

III.   **CONCLUSION**

For the foregoing reasons, It Is hereby Ordered that:

1.      Petitioner's First Motion for Judicial Notice [Docket No. 60] is Granted in Part as to the existence of two differently paginated Official Court Reporter's Transcripts and as to the fact that Petitioner had previously referenced the discrepancy between the page numbers in his transcript and Lodgment Numbers 25-36;

2.      Petitioner's First Motion for Judicial Notice is Denied in Part as to the fact that Respondent did not bring the possibility of Petitioner's using the wrong transcript to the attention of the court;

3.      Petitioner's second Motion for Judicial Notice [Docket No. 64]  is Denied and the

13

Clerk is Ordered to replace page 14 of Motion to Compel [Docket No. 63] with the corrected page 14 found attached to the second Motion for Judicial Notice;

4.     Petitioner's Motion to Compel Compliance with Court Order [Docket No. 63] is construed as a request for additional transcripts to be lodged and Respondent is Ordered, within 2 weeks of the date of this Order,  to either Lodge the transcripts of the Marsden hearings and a complete version of Lodgment Number 12 or a declaration under penalty of perjury explaining why it is not possible to lodge such documents.

5.     The Motion to Compel Compliance with Court Order is or Denied in all other respects.

6.     Petitioner's Motion for Sanctions [Docket No. 61] is DENIED.

7.     Petitioner's  Motion for Discovery [Docket No. 53.] is DENIED;  and

8.     In light of the additional evidence the Court has ordered Lodged, the Petitioner's deadline for filing a Traverse is extended to July 1, 2011.

IT IS SO ORDERED.

DATED:  May 24, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

10cv423 BTM (NLS)