1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 RICHARD CHARLES BUCHANAN,          Civil No.     10-0423 GPC (NLS)

12                    Petitioner,

13                                    **ORDER:**

14                                    **(1) ADOPTING REPORT AND RECOMMENDATION AS MODIFIED;**

15      vs.

16                                    **(2) DENYING PETITION**

17                                    **(3) DENYING MOTION FOR AN EVIDENTIARY HEARING**

18 JEFFREY BEARD, Secretary[1]        **(4) DENYING MOTION TO EXPAND THE RECORD**

19

20                                    **(5) GRANTING IN PART AND DENYING IN PART REQUEST FOR FACTUAL FINDINGS AND JUDICIAL NOTICE; and**

21                    Respondent.

22                                    **(6) DENYING CERTIFICATE OF APPEALABILITY**

23

24

25        [1] In his Amended Petition, "Matthew Cate, Secretary" is named as Respondent. Matthew Cate
26 is no longer the Secretary of the California Department of Corrections and Rehabilitation; rather, Jeffrey
   Beard has recently been appointed Secretary of that agency. The Court therefore substitutes "Jeffrey
27 Beard" as Respondent in place of "Matthew Cate." *See* FED. R. CIV. P. 25(d)(1) ("When a public
   official is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise
28 ceases to hold office, the action does not abate and the officer's successor is automatically substituted
   as a party.")

10cv0423

# I.  INTRODUCTION

Presently before this Court is a First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), filed by Richard Charles Buchanan ("Buchanan" or "Petitioner").  The matter was referred to United States Magistrate Judge Nita L. Stormes, pursuant to 28 U.S.C. § 636(b)(1)(B).  Judge Stormes issued a Report and Recommendation ("Report") on September 30, 2011, which recommended that the Court deny the Petition and deny Petitioner's Motion for an Evidentiary Hearing. Buchanan filed Objections to the Report on May 16, 2012.  (ECF No. 112.)  On June 12, 2012, Petitioner filed a Motion to Expand the Record.  (ECF No. 117.)  On April 15, 2013, Petitioner filed a "Motion for Leave to File Factual Determination and Judicial Notice."  (ECF No. 120)

Having considered the Report and the Objections, as well as the material submitted by the parties, the Court **ADOPTS** the Report as modified, **DENIES** the Petition with prejudice, **DENIES** the motion for an evidentiary hearing, **DENIES** the request to expand the record, **GRANTS IN PART AND DENIES IN PART** Petitioner's motion for factual determinations and judicial notice, and *sua sponte* **DENIES** a certificate of appealability.

## II. STANDARD OF REVIEW

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  Because objections were made, the Court reviews the magistrate judge's findings and recommendations de novo. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

## III.  PROCEDURAL BACKGROUND

The Report accurately recounts the lengthy procedural history of Buchanan's case, and the Court therefore **ADOPTS** that portion of the Report in full.  In short, Buchanan was convicted after a jury trial of possession of a firearm by a felon (Cal. Penal Code § 12021(a)(1)); transporting a controlled substance (Cal. Health and Safety Code

§ 11379(a)); possession for sale of a controlled substance (Cal. Health and Safety Code § 11378); possession of a controlled substance (Cal. Health and Safety Code § 11377(a)); making a criminal threat (Cal. Penal Code § 422); assault with a semi-automatic firearm (Cal. Penal Code § 245(b)); and kidnaping for ransom or extortion (Cal. Penal Code § 209(a)). (Lodgment No. 23, vol. 11 at 1621.) Buchanan was sentenced to 45 years-to-life plus ten years in prison. (Lodgment No. 24, vol. 4 at 901-02.)

Buchanan appealed his conviction to the California Court of Appeal and the California Supreme Court, both of which affirmed his conviction. (*See* Lodgment Nos. 1-10.) Buchanan also filed petitions for writ of habeas corpus in the San Diego Superior Court and the California Court of Appeal, all of which were denied. (*See* Lodgment Nos. 11-15.)  In addition, Buchanan filed a petition for review of the denial of his habeas petitions in the California Supreme Court, which was denied. (*See* Lodgment Nos. 16-18.)

Buchanan filed his original petition in this Court on February 22, 2010. (ECF No. 1.) The Court stayed the petition on July 23, 2010. (ECF No. 26.) The Court lifted the stay on October 4, 2010 (ECF No. 30) and Buchanan filed a First Amended Petition on December 9, 2010. (ECF No. 40.) Respondent filed an Answer on March 9, 2011, and Petitioner filed a Traverse on June 10, 2011. (ECF Nos. 51, 77.) Petitioner filed a Motion for Evidentiary Hearing on September 14, 2011. (ECF No. 99.)

On September 30, 2011, the Magistrate Judge issued a Report recommending the Petition and Motion for Evidentiary Hearing be denied. (ECF No. 101.) Petitioner filed Objections to the Report on May 16, 2012. (ECF No. 112.) Buchanan also filed a motion to expand the record on June 4, 2012. (ECF No. 117.)  Finally, on April 15, 2013, he filed a request to file a motion along with a "Motion for Factual Determination and Judicial Notice." (ECF No. 120.)

/ / /

/ / /

# IV.  FACTUAL BACKGROUND

The Report correctly notes that this Court is required by 28 U.S.C. § 2254(e)(1) to defer to the factual findings made by the state appellate court.  (*See* Report at 2 (citing *Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from such facts, are entitled to statutory presumption of correctness)); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981) (stating deference is owed to findings of state trial and appellate courts); *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990) (holding factual findings of state trial and appellate courts are entitled to presumption of correctness on federal habeas corpus review).

The Report includes a summary of facts taken verbatim from the California Court of Appeal's opinion denying Buchanan's direct appeal of his conviction.   In his Objections, Buchanan challenges the state court's summary of the facts related to the traffic stop.  The Report quotes the appellate court, stating: "Officer Perry McIvor, a task force member, was concerned Torres' life could be in danger and contacted two patrol officers to make a traffic stop."  (Report at 4.)  Buchanan argues that Detective McIvor was not concerned for Torres' safety.  (Obj. at 6-12.)[2]  He states that there is "no documentation, police reports, etc., supporting the theory that police concerns for [Torres'] life or those of [Torres'] family members. . . were a focal point of [the] task force agents' action [on the day of the traffic stop]."  (Obj. at 12.)  He points to transcripts of radio communications between McIvor and other officers right before the stop, in which McIvor does not mention concern for Torres' safety.  (*See* Lodgment No. 12, Ex. 6 at 7-8.)  In the transcript, there is discussion about basing the traffic stop on the fact that the license plate of the car was "barely hanging on."  (*Id.* at 2.)  Buchanan has not overcome the presumption of correctness because there is ample evidence elsewhere in the record to support the state court's finding.  McIvor testified at trial and at the suppression hearing that he was worried about Torres' safety and that he communicated

---

[2]   For ease of reference, the Court will use the page numbers assigned by the Court's electronic filing system when referring to the Objections and the Petition.

10cv0423

these concerns to fellow officers who made the stop. (*See* Lodgment No. 33, vol. 9 at 1025; Lodgment No. 27 at 79-80, 84.) This is sufficient to support the Report's factual summary. *See Parke*, 506 U.S. at 35-36. To the extent Buchanan appears to argue that McIvor testified untruthfully, his claim is discussed below in section V(B)(3)(a) of this Order.

Buchanan also objects to the use of the word "business" in the statement of facts – specifically, the portion which describes a recorded phone conversation during which "Brooks told Buchanan he had a 'connection' at Donovan that helped him with business in the prison and she was considering transferring to another institution because 'Triste' was threatening her and her children." (*See* Report at 3.) Buchanan argues that the term "business" is an inaccurate translation of the phone conversation, which was in Spanish. The description of the conversation in the appellate court opinion, and quoted in the Report, is an accurate summary of the trial record. The transcript of the conversation states, "I have a person here, that, that, watches over the business I have here. . . And she has a problem with a person outside, a guy from. . . from. . . that goes by the name of Triste, some young guy." (Lodgment No. 21, vol. 1 at 21.) Buchanan has not overcome the presumption of correctness afforded state court factual findings. *See Parke*, 506 U.S. at 35-36. To the extent Buchanan argues the translation was inaccurate and rendered his trial fundamentally unfair, his objections are discussed in section V(B)(3)(b) of this Order.

The Court therefore **OVERRULES** Petitioner's Objections and **ADOPTS** the factual background as recited in the Report.

## V. DISCUSSION

### A.    AEDPA Legal Standard

As a preliminary matter, the Report correctly notes that the current Petition is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and that to obtain federal habeas relief with respect to claims which have been / / /

5

10cv0423

1   adjudicated on their merits in state court, Petitioner must satisfy either § 2254(d)(1) or

2   § 2254(d)(2).  Those sections state:

3   > (d) An application for a writ of habeas corpus on behalf of
    > a person in custody pursuant to the judgment of a State court
4   > shall not be granted with respect to any claim that was
    > adjudicated on the merits in State court proceedings unless the
5   > adjudication of the claim –

6   > (1) resulted in a decision that was contrary to, or
    > involved an unreasonable application of, clearly established
7   > Federal law, as determined by the Supreme Court of the
    > United States; or
8
    > (2) resulted in a decision that was based on an
9   > unreasonable determination of the facts in light of the
    > evidence presented in the State court proceeding.
10

11   28 U.S.C. § 2254(d)(1)-(2).

12      Buchanan does not specifically object to the standard set forth in the Report.  He

13   does, however, state that pro se pleadings must be construed liberally.[3]  (Obj. at 13-14.)

14   "A document filed pro se is 'to be liberally construed.'"  *Erickson v. Pardus*, 551 U.S.

15   (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal

16   citations omitted).  While it is true that "Pro se habeas petitioners may not be held to the

17   same technical standards as litigants represented by counsel," *see also Corjasso v. Ayers*,

18   278 F.3d 874, 878 (9th Cir. 2002), this does not alter the legal standard applied to federal

19   habeas petitions under § 2254(d).  Accordingly, the Court **ADOPTS** the legal standard

20   set forth in the Report.

21   **B.   Analysis**

22      As the Report notes, Buchanan raises eleven claims in his Petition: (1) the

23   prosecution presented perjured testimony; (2) his car was stopped and searched in

24   violation of the Fourth Amendment; (3) the prosecution presented false evidence as to

25   what was said on some of the wiretaps; (4) the prosecutor failed to disclose exculpatory

26   evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); (5) the trial judge

27

28      [3] To the extent Buchanan argues about the standard for evaluating Fourth Amendment claims
    on federal habeas (*see* Obj. at 13), the Court addresses those assertions in section V(B)(2) of this Order.

exhibited bias; (6) there was excessive security imposed on him at the trial; (7) the prosecutor committed misconduct; (8) the trial court did not properly limit the scope of the gang expert's testimony; (9) trial counsel was ineffective; (10) appellate counsel was ineffective; and (11) the trial court improperly imposed a $10,000 restitution fine. (Pet. at 6-16, ECF No. 40; Pet. Attach. C, ECF No. 40-1; Mem. of P. & A. Supp. Pet., ECF No. 40-2; Traverse, ECF No. 77.)

### 1. *Procedural Default*

The Report concluded that because the California Supreme Court presumably addressed the merits of claims one through seven, nine and eleven, those claims were not procedurally defaulted. (Report at 12-13.)   Buchanan does not object to this finding. (*See* Obj. at 17-18.)

Buchanan raised claims one through seven, nine and eleven in a petition for habeas corpus filed in the California Court of Appeal. (*See* Lodgment No. 12.)  The court denied the claims because Buchanan could have raised those issues on direct appeal, but did not.  The appellate court cited *In re Martinez*, 46 Cal. 4th 945, 956 (2009), *In re Harris*, 5 Cal. 4th 813, 829 (1993) and *In re Clark*, 5 Cal. 4th 750, 797-98 (1993). (Lodgment No. 15.)  The rule applied by the appellate court is also known as the "*Dixon* rule," under which a "defendant desiring to bring claims in a state habeas petition, must, if possible, have pursued the claims on direct appeal from his conviction." *Park v. California*, 202 F.3d 1146, 1151 (9th Cir. 2000) (citing *In re Dixon*, 41 Cal. 2d 756 (1953)).

Buchanan next raised the same claims in a petition for review to the California Supreme Court. (Lodgment No. 16.)  As the Report notes, that court then ordered Respondent to file a brief addressing whether Buchanan had "established a prima facie case for relief, such that this court should grant the petition for review." (Lodgment No. 17.)  In his brief, Respondent argued that claims one through seven, nine and eleven were barred under *Dixon*.  He also argued that Buchanan had failed to establish a prima facie case for relief as to the merits of the claims. (*See* Lodgment No. 18 at 21-24.)  The

1   supreme court ultimately denied the petition for review without comment or citation of

2   authority.  (Lodgment No. 20.)

3          As discussed in the Report, this case is similar to *Trigeuros v. Adams*, 658 F.3d

4   983, 990 (9th Cir. 2011).  In that case, the state superior court denied petitioner's habeas

5   petition as untimely.  A subsequent petition was denied by the appellate court, without

6   citation.  *Id.* at 986.  Trigeuros then filed a petition with the California Supreme Court.

7   That court requested informal briefing on the merits, and the respondent filed a brief

8   addressing procedural bars as well as the merits. The California Supreme Court then

9   summarily denied the petition without comment or citation.  *Id.*  The Ninth Circuit

10  concluded that, under those circumstances, the petition had been denied on the merits

11  because "the California Supreme Court had the timeliness question before it, and did not

12  cite to cases involving a timeliness procedural bar."  *Id.* at 990 (citing *In re Robbins*, 77

13  Cal. Rptr. 2d 153, 959 P.2d at 340 n. 34 (1998)).

14         Like *Trigeuros*, here the state supreme court requested briefing on whether

15  Buchanan had stated a prima facie case for relief.  In its answer, the government argued

16  that the claims were procedurally barred under *Dixon* and also that Buchanan's claims

17  failed on the merits.  The California Supreme Court's denial did not cite *Dixon* or any

18  procedural bar.  Thus, this Court presumes claims one through seven, nine and eleven

19  were denied on the merits.  *See Trigeuros*, 658 F.3d at 990.

20         The Court therefore **ADOPTS** the Report's conclusion that the claims are not

21  procedurally barred.[4]  Having found the claims are not procedurally defaulted, this Court

22  also adopts the Report's finding that in addressing the merits of the claims, the

23  appropriate standard of review requires the court to determine whether the state court's

24  denial of the claims was contrary to, or an unreasonable application of, clearly

25

26         [4]  The Report alternatively considers whether the claims would be procedurally defaulted "in the
27  event *Trigueros* does not apply." (Report at 13-16.)  Buchanan objects to the Report's conclusion that,
    assuming *Trigueros* is inapplicable, the claims would be procedurally barred.  (Obj. at 17-18.)  This
28  Court need not address that issue because it finds the claims are not procedurally defaulted under
    *Trigueros*.

established law.  (Report at 16 (citing *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002)).  In an abundance of caution, however, the Magistrate Judge reviewed the claims de novo, the applicable standard if the claims were found to be procedurally defaulted.  *Id*. at 1167-68.  (*See* Report at 16-17.)  To the extent the Report conducts de novo review of the claims, the Report is **ADOPTED** as **MODIFIED** to reflect the correct deferential standard of review.

### 2.    *Illegal Detention of Buchanan's Car (Claim Two)*

In his Petition, Buchanan claims the state court erred in denying his motion to suppress evidence.  He argues that his Fourth Amendment rights were violated when officers stopped and searched his car without a warrant or probable cause.  (Pet. at 7, ECF No. 40; Pet. Attach. C at 9-12, ECF No 40-1; Mem. of P. & A. Supp. Pet. at 19-41, ECF No. 40-2; Traverse at 15-18, ECF No. 77.)  The Report correctly set forth the applicable law.  The Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir.1993); *see also Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996) ("The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did, in fact, do so, or even whether the claim was correctly decided.") (citations omitted); *Gordon v. Duran*, 895 F.2d 610, 613-14 (9th Cir. 1990) (holding that California Penal Code Section 1538.5 provided opportunity in state court for "full and fair litigation" of Fourth Amendment claims) (quoting *Stone*, 482 U.S. at 481-82)).

Here, the record shows that Petitioner thoroughly litigated his search and seizure claim in a motion to suppress made pursuant to Penal Code section 1538.5. At the hearing, his attorney cross-examined detectives and argued for suppression, and the presiding judge carefully considered the motion before ruling.  (Lodgment No. 27, vol. 3 at 71-120, 125-132.)  Under California law, Petitioner could also have renewed the

suppression motion before trial and could have challenged the denial of the motion on direct appeal, although Buchanan did not do so.  *See* Penal Code § 1538.5(i).  He did, however, raise the issue in a petition for habeas corpus to the state superior, appellate and supreme courts.  (*See* Lodgment Nos. 11-13, 15-16, 20.)  Thus, Petitioner was afforded the full and fair opportunity for litigation contemplated by *Stone*.  *See Gordon*, 895 F.2d at 613-14.

In his Objections, Buchanan asserts "no California court has provided Petitioner 'the necessary facilities and procedures and adequate inquiry.'"  (Obj. at 20.)  He states that the superior court denied his claim because he failed to provide "all available supporting evidence."  (*Id.*)  It is true that in its order denying Buchanan's Fourth Amendment claim, the superior court noted that Buchanan had attached only select portions of the suppression hearing transcript and that the claim was denied for failure to provide a complete record of the proceedings, which were available to Buchanan.  (Lodgment 11 at 8.)  But the court nonetheless went on to address the merits of Buchanan's claim at length and concluded that probable cause supported the stop.  (*Id.* at 8-10.)  The court also addressed Buchanan's assertion that McIvor testified untruthfully about the circumstances leading up to the traffic stop.  (*See id.* at 14-15.)  Buchanan then presented the claim to the California Court of Appeal and the California Supreme Court.  Thus, he was provided an opportunity to litigate his claim.  *See Ortiz–Sandoval*, 81 F.3d at 899.

Buchanan also argues in his Objections that his Fourth Amendment claim is not precluded by *Stone* because he was denied effective assistance of counsel at the suppression hearing.  (Obj. at 13, 20.)  Buchanan is correct that *Stone v. Powell* does not bar consideration of a claim that a trial attorney rendered ineffective assistance of counsel in litigating a Fourth Amendment claim.  *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). The Magistrate Judge addressed Petitioner's ineffective assistance of counsel claim in her Report and this Court will address his Objections in section V(B)(9)(d) of this Order.  Accordingly, the Court **OVERRULES** Petitioner's Objections

and **ADOPTS** the Report's findings and conclusions as to claim two.

### 3.   *Use of Perjured or False Testimony (Claims One and Three)*

Buchanan claims the prosecutor presented perjured or false testimony at trial.  He alleges that Detective McIvor made several false statements at a pretrial hearing and at trial, and that the prosecutor also presented inaccurate translations of the wiretapped phone calls.  (Pet. at 6, ECF No. 40; Pet. Attach. C to Pet. at 6-8, ECF No. 40-1; Mem. of P. & A. Supp. Pet. at 4-18, ECF No. 40-2.)  The last reasoned decision addressing these claims is the superior court's denial of Buchanan's habeas petition.  (*See* Lodgment No. 11.)  The Report reviewed the claims de novo.  However, because this Court concludes the claims are not procedurally defaulted, it reviews the claims to determine whether the state court's denial of them was contrary to, or an unreasonable application of, clearly established law.  *See Williams*, 529 U.S. 362, 403 (2000);  *see also Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).  In that regard, the Report is **MODIFIED**.

The Report correctly sets forth the applicable clearly established Supreme Court law.  (Report at 17.)  "The knowing use of perjured testimony by a prosecutor generally requires that the conviction be set aside."  *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976)).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  *Napue v. People of the State of Illinois*, 360 U.S. 264, 269 (1959).  However, the presentation of conflicting versions of events, without more, does not constitute knowing presentation of false evidence.  *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002).  To prevail on such claims, three things are required: (1) the testimony or evidence must be false, (2) the prosecution must have known or should have known it was false, and (3) the false testimony must be material.  *See Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (en banc) (citing *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003)).  To establish materiality, a petitioner must show a "reasonable likelihood that the false testimony could have affected the judgment of the

/ / /

10cv0423

jury." *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (quoting *Hayes*, 399 F.3d at 985).

> a.      McIvor's Statements Concerning the Stop

Buchanan alleges McIvor made several false statements at the suppression hearing, and at trial, concerning the stop of his vehicle.  The superior court addressed these claims and denied them, stating:

> [Petitioner asserts] that a detective testified to the existence of a telephone conversation that never existed, fabricated the existence of a hanging license plate on Petitioner's vehicle as a pretext for the traffic stop, and misrepresented circumstances surrounding the initial contact with Petitioner following the traffic stop.  Petitioner fails to demonstrate that the telephone call referred to did not [take place].  Even if the detective was mistaken regarding the existence of the call, Petitioner fails to demonstrate the call is material to the defense or otherwise relevant. . . . [Furthermore,] this court has already ruled that reasonable suspicion existed for the traffic stop.  A hanging license plate was not asserted as a basis for that stop. Regarding the claim a detective misrepresented circumstances surrounding the initial contact, the court need not accept Petitioner's uncorroborated statement. (*In re Alvernaz* (1992) 2 Cal. 4th 924 at p. 938.)  Even assuming the truth of Petitioner's description of events, he fails to make a prima facie showing that the detective's testimony was improperly admitted or unfairly prejudicial.

(Lodgment No. 11 at 14.)

As the Report found, McIvor testified at trial that some time before August 25, 2004, he learned through wiretap conversations that a person by the name "Triste"[5] was "interfering with Mexican Mafia business."  (Lodgment No. 33 at 1025.)  McIvor believed that "Triste" might be a person named Jesse Gutirres, who was on parole.  (*Id.* at 1026.)  On August 25, 2004, McIvor learned from wiretaps that Jessica Chavez had contacted Buchanan to complain about being harassed by someone named "Triste." (Lodgment No. 33, vol. 9 at 1027.)  Buchanan was upset that Triste had disobeyed a direct order, and drove with another individual to Chavez's house.  (*Id.* at 1028.)  When Buchanan left Chavez's house, McIvor believed he was headed to see Triste.  Other members of the surveillance team saw Buchanan and an individual later identified as

---

[5] "Triste" and "Torres" are the same person, and the names are used interchangeably throughout the state court proceedings.

Parraz, arrive at a house, and go inside.  Team members believed Triste was also inside the house.  (*Id.* at 1069.)  Buchanan and Parraz, came out some time later with a third man, who McIvor believed to be Triste.  The three men got into Buchanan's car and left. (*Id.*)

While on surveillance, McIvor passed their car at some point and was able to look inside.  (*Id.* at 1032.)  He saw who he believed, based on his physical appearance, to be Gutirres, "reaffirming [his] belief that [he] had the right Triste."  (*Id.* at 1032.)  He testified that he was concerned for Triste's safety based on what he knew from the wiretaps.  (*Id.* at 1068.)  He told Officer Nunez the car would have to be stopped, because of the threat.  He testified that he also told Nunez that he believed there was a "parolee at large" in the car and that, if possible, the car should be stopped without disclosing the existence of the wiretaps, so as not to jeopardize the rest of the ongoing investigation.  (*Id.* at 1033-34.)

As an initial matter, the Magistrate Judge properly noted that to the extent Petitioner claims that Officer McIvor's purported false testimony improperly caused the court to deny the suppression motion and allow the use of unlawfully seized evidence at Buchanan's trial, the claim is not cognizable on federal habeas corpus review.  (Report at 17 fn. 5, 26-27.)  As discussed in section V(B)(2) of this order, federal habeas review is unavailable as to his claim that McIvor's purported false testimony led to the wrongful denial of the motion to suppress.  *See Moormann v. Schiriro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (finding that claim challenging validity of search was barred by *Stone* where petitioner raised issue in pre-trial evidentiary hearing, but argued on habeas review that state court's factual findings were not supported by the evidence); *see also Carr v. Runnels*, No. C 03-1369 PJH (PR), 2007 WL 133971, at *4-5 (N.D. Cal. Jan.16, 2007) (holding that petitioner's allegation that perjured testimony was offered at preliminary hearing did not affect adequacy of hearing procedures for litigation of Fourth Amendment claim and did not alter conclusion that *Stone v. Powell* applied).  Therefore, only statements made a trial are relevant to this Court's inquiry.

The state court's denial of Buchanan's perjury claims was neither contrary to, nor an unreasonable application of, clearly established law.  First, the Report properly found that Buchanan failed to show the prosecutor presented false testimony regarding when McIvor advised Nunez the car needed to be pulled over.  (Report at 18-19.)  There was some minor inconsistency in McIvor's testimony. At the preliminary hearing McIvor stated there were three people in the car when he told Nunez it needed to be stopped. At the suppression hearing, McIvor testified that he told Nunez a stop would be necessary when Buchanan and Parraz were on their way to pick up Triste.  (Lodgment No. 27, vol. 3 at 81.)  At trial, he testified that it was when the three were still inside the house that he advised Nunez that they would need to "scoop them up."  (Lodgment No. 33, vol. 9 at 1071.)

Although there were slight discrepancies between McIvor's trial testimony and that of his preliminary hearing and suppression hearing testimony, this is insufficient to establish deliberate presentation of false testimony at trial.  Petitioner has not established that any of the testimony was a deliberate lie, nor that it was the testimony at trial, as opposed to the other testimony, that was untrue.  Inconsistencies in testimony alone are insufficient to establish that the testimony was perjured. *See United States v. Croft*, 124 F.3d 1109,1119 (9th Cir. 1997) ("The fact that a witness may have made an earlier inconsistent statement . . . does not establish that the testimony offered at trial was false); *Zuno-Arce*, 44 F.3d at 1423 (inconsistencies between testimony at trial and retrial not sufficient to establish presentation of false testimony).

Moreover, the Report found that even assuming the testimony was false, it was not material because there was no "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Hayes*, 399 F.3d at 985. (Report at 19.)  The majority of evidence against Buchanan came from the wiretaps and the testimony of Jessica Chavez and Torres.  It is unlikely the jury's verdict would have been affected by evidence regarding when McIvor told Nunez that they would need to stop Buchanan's

/ / /

14

10cv0423

1   car (whether he did so while Buchanan and Parazz were on their way to Triste's house,

2   or right before the three left the house, or right after they drove away).

3        Buchanan objects to this finding, stating that the Magistrate Judge erred "in

4   interpreting and characterizing the, 'when' of it, in isolation, and applying *Hayes*

5   standard (R&R at 19) to it." (Obj. at 22-23.)  Petitioner argues that McIvor's purported

6   false statements regarding the stop should be considered together because his testimony

7   was "all over the board." (*Id.* at 23.)  In particular, he points to McIvor's trial testimony

8   about the basis for the stop and argues it is contradicted by transcripts of task force radio

9   transmissions (TAC3 talkgroup) between McIvor and other members of the task force.

10   (*Id.* at 25.)

11        The Magistrate Judge considered Buchanan's claims related to the TAC3

12   talkgroup transcript and concluded that, while McIvor made no explicit mention of a

13   parolee at large, or fear for Triste's safety on the TAC3 talkgroup recordings, this does

14   not show he testified falsely at trial.  (Report at 19-21.)  McIvor stated that he was in

15   communication with other officers via his San Diego police radio, the task force radio,

16   and cell phone.   The TAC3 talkgroup transcript contains only task force radio

17   communications.  McIvor testified that he relayed the information to Nunez about the

18   parolee at large and Triste's safety by cell phone.[6]  (Lodgment 27, vol. 3 at 76, 80.)

19        The state court's denial of the claim was neither contrary to, nor an unreasonable

20   application of, clearly established law.  Nunez also testified at both the trial and the

21   suppression hearing that McIvor called him and told him the car needed to be stopped

22   because of concern for Triste, and that there was a parolee at large in the car.  (Lodgment

23   No. 27, vol. 3 at 36. Lodgment No. 33, vol. 9 at 970.)  Nunez's partner, Officer Joel

24   Beilstein, also corroborated the testimony.  (Lodgment No. 32, vol. 8 at 892.)  While

25   there is nothing in the TAC3 talkgroup transcript about McIvor being concerned for

26   Triste's safety, this alone does not establish that McIvor gave false testimony at trial or

27

28

---

      [6]  Although not from McIvor, there is mention on the TAC3 talkgroup transcript from Agent Desarno, of a parolee being the basis for probable cause.  (Lodgment No. 12, Attach. F, Ex. 6 at 7- 9.)

that, even if he did, the prosecutor knew it was false. *United States v. Geston*, 299 F.3d 1130, 1135 (9th Cir. 2002) (stating that the presentation of conflicting versions of events, without more, does not constitute knowing presentation of false evidence).

Wiretap conversations between Buchanan, Brooks, Chavez, Torres/Triste and others leading up to the stop, support McIvor's testimony that there was reason to be concerned for Triste's safety. Buchanan was clearly angry Torres had disobeyed a direct order. (*See e.g.* Lodgment No. 21, vol. 1 at 115-17.) Based on information law enforcement had regarding Buchanan's status as a "Big Homie" in the Mexican Mafia, it was reasonable to believe that Torres' safety was in jeopardy when Buchanan went to see him. The Report properly concludes Buchanan has not shown the testimony was false, or that, even assuming it was, that it was material to the outcome. *See Hayes*, 399 F.3d at 985.

In his Objections Buchanan also argues McIvor's reference to a hanging license plate, heard on the TAC3 talkgroup recording, shows that he lied about his concern for Torres' safety. (Obj. at 10.) First, as the state court noted, the hanging license plate was not asserted as a basis for probable cause. (Lodgment No. 11 at 14.) Moreover, as discussed in the Report, McIvor's observation about the license plate on the dispatch recording does not establish he lied at trial. It was undisputed that officers were attempting to find other, valid bases for the stop, such as the belief Triste was a parolee at large or that the license plate was hanging down, in order to keep the existence of the wiretap a secret as long as possible. (*See* Lodgment No. 27, vol. 3 at 127-28; *see* Lodgment No. 33, vol. 9 at 1034.)  In addition, that there is no mention of fear for Torres' safety in the TAC3 talkgroup recordings (obj. at 11-12), does not contradict McIvor's testimony. And as discussed above, the wiretap recordings of telephone conversations that took place leading up to the stop, corroborate McIvor's testimony that he was concerned for Torres.

Buchanan also argues in his Objections that the Magistrate Judge erred when she failed to consider why McIvor did not immediately intervene when he learned from the

wiretaps of an August 21, 2004 phone conversation, that a man named "Triste" might be in danger because he was harassing Chavez. (Obj. at 26.) At trial, however, McIvor never testified that he was concerned for Triste's immediate safety based on the initial August 21, 2004 phone conversation between Brooks and Buchanan. Nonetheless, McIvor did try to ascertain who Triste was after learning he might be interfering with Mexican Mafia business. (Lodgment No. 33, vol. 9 at 1025-26.) It was not until he learned of the August 25, 2004 conversations and Buchanan's meeting with Triste that McIvor became concerned for Triste's safety. (*Id.* at 1027.)

Next, as the Report found, the TAC3 talkgroup transcript does not prove Buchanan's claims that McIvor lied when he stated that he told Nunez the people in Buchanan's car were likely armed and they would probably kill Triste. (Report at 21-22.) There is evidence in the wiretap transcripts which suggests Buchanan planned to be armed when he went to meet Triste. (Lodgment No. 27, vol. 1 at 134.) In a telephone conversation with an associate named Corrado, Buchanan stated he was going to meet Torres/Triste to talk. He added, "if he gets out of line well, uh . . . you know, anything goes. . . . We are prepared, no problem, you know?" (Lodgment No. 27, vol. 1 at 1345.) McIvor also knew that Triste had disobeyed a direct order from a "Big Homie" and based on his experience, the consequences for that were serious injury or death. (Lodgment No. 33, vol. 9 at 1086.) Thus, Buchanan has not shown McIvor's testimony was false. *See Zuno-Arce*, 44 F.3d at 1423. The state court's denial of this claim was neither contrary to, nor an unreasonable application of clearly established law. *See Williams*, 529 U.S. at 412-13.

Buchanan also argues in his Objections that McIvor never told Nunez that Buchanan's car needed to be pulled over. (Obj. at 22.) He claims that it was Agent Desarno who ordered the stop. Buchanan appears to also argue that it was Desarno (not McIvor) who specifically directed Nunez to initiate the stop. (*See* P&A in Supp. Pet. at 11; *see also* Decl. in Supp. of Mot. at 13-14, ECF No. 112.) It is true that Agent Desarno was the first one on the TAC3 talkgroup transcript to state that the car needed to be

stopped.[7]   (Lodgment No. 12, Attach. C, Ex. 6 at 6.)   As discussed above, however, there is testimony from McIvor, Nunez and Beilstein that McIvor was also communicating with Nunez via cell phone at around the same time.[8]  Petitioner has failed to show the testimony was false.  *See Zuno-Arce*, 44 F.3d at 1423.  Even assuming, however, that it was Desarno and not McIvor who initially ordered the stop, Buchanan has not shown that it was material because there was no "reasonable likelihood that the false testimony could have affected the judgment of the jury."  *Hayes*, 399 F.3d at 985.  Testimony about which law enforcement officer directed the stop had little, if any, relevancy to the ultimate issues.  To the extent Buchanan seeks to argue that it was relevant to the suppression motion, that claim is foreclosed by *Stone v. Powell*, for the reasons discussed above.  As the Report concluded, the testimony of Chavez and Torres, and the wiretap transcripts provided bulk of the evidence against Buchanan.

Buchanan also argues in his Objections that the Magistrate Judge "errs using a call from Chavez to Buchanan, after the latter had left the house, to explain away McIvor's lie."  (Obj. at 20; *see also* Report at 23.)   While it is not entirely clear, it appears Buchanan is referring to McIvor's testimony presented at the suppression hearing, but not at trial.  As discussed above, his claims of perjured testimony at the suppression hearing lead to denial of his motion to suppress, are foreclosed by *Stone v. Powell*.  *See Moormann*, 426 F.3d at 1053. Even if it were not foreclosed, Buchanan would not be entitled to relief.  McIvor testified at that hearing that Buchanan had placed a call to Chavez while inside the house with Triste.  (Lodgment No. 27, vol. 3 at 102.)   The Report concluded that McIvor's testimony that he knew Torres had not been harmed at

---

[7]   Initially, while Buchanan and Parazzo were in the house with Torres, and Officer Rios asks if Desarno wants to "have a unit stop 'em when they leave from here, or do we risk the high speed pursuit?" Desarno responds, "I don't think we need to stop 'em our S-1. I don't think so. It's your call but I don't think we do, I think we get 'em ID'd. We've seen that car before.  Hopefully we can follow him to where he puts down for the night." (Lodgment No. 12, Attach. C, Ex. 6 at 5.)  It was only after surveillance confirmed that the individual believed to be "Triste" was also in the vehicle with Buchanan and Parraz, that Desarno stated "We're gonna have to stop that car." (*Id.* at 6.)

[8]   Desarno testified at trial, but not as to any details regarding the stop. His testimony generally focused on the how the wiretaps were obtained, monitored and maintained. (Lodgment No. 30, vol. 6 ag 430-37.)

10cv0423

the time of the stop, was supported by a wiretap recording of Buchanan telling Chavez "[he] was still with [him]." (Lodgment No. 21, vol. 1 at 123.) Buchanan asserts this call did not take place while they were inside the house. Wiretap recordings indicate that Buchanan told Chavez that he was driving during that particular conversation. However, this does not establish that McIvor testified falsely or that the prosecution knew it was false. *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) (stating that a witness' conflicting recollection of events does not establish that the testimony offered at trial was false); *see also Geston*, 299 F.3d at 1135 (mere inconsistencies in the evidence do not establish the knowing use of false testimony by the prosecutor). Even assuming McIvor was mistaken about the timing of that call, Buchanan has not shown prejudice. Torres testified that while inside the house Buchanan called Chavez, passed him the phone, and Buchanan told him to tell her "it's over. . . it's through." (Lodgment No. 31, vol. 7 at 723-24.) Buchanan has not shown that it was material because there was no "reasonable likelihood that the false testimony could have affected the judgment of the jury." *Hayes*, 399 F.3d at 985.

In his Objections, Buchanan argues that "if the judge and/or jury [had] known of McIvor's false statements they could/would have weighed in petitioner's favor at the suppression of evidence hearing and, at trial, in case." (Obj. at 26.) Buchanan also points to California Evidence Code § 780.[9] First, as discussed above, Buchanan has not

_____

[9] California Evidence Code § 780 states:

> Except as otherwise provided by statute, the court or jury may consider in determining the credibility of a witness any matter that has any tendency in reason to prove or disprove the truthfulness of his testimony at the hearing, including but not limited to any of the following:
>
> (a) His demeanor while testifying and the manner in which he testifies.
>
> (b) The character of his testimony.
>
> (c) The extent of his capacity to perceive, to recollect, or to communicate any matter about which he testifies.
>
> (d) The extent of his opportunity to perceive any matter about which he testifies.

10cv0423

shown the testimony was actually false or that, assuming it was, that the prosecutor knew it was false. *See Zuno-Arce*, 44 F.3d at 1423. To the extent Buchanan is again arguing that perjury resulted in the denial of his suppression motion, that claim is foreclosed. As such, his allegations related to testimony given only at the suppression hearing (and not at trial) (*see* Report at 22-23) are not cognizable. *Moormann*, 426 F.3d at 1053. Moreover, nothing prevented the jury from evaluating McIvor's credibility at trial, pursuant to California Evidence Code section 780. In fact, the jury instructions included language similar to section 780. (Lodgment No. 22, vol. 2 at 248-49.)

Finally, Buchanan argues the Magistrate Judge "errs in downplaying McIvor perjury claim." (Obj. at 20.) He argues that when viewed together, the purported instances of false testimony amounted to prejudice because McIvor's credibility would have been damaged. As noted above, the state court concluded that "even assuming the truth of Petitioner's description of events, he failed to show a reasonable probability a different outcome would have resulted at trial." (Lodgment No. 11 at 15.)

The state court's conclusion was neither contrary to, nor an unreasonable application of, clearly established law. As the Report discussed, the case more or less depended on the testimony of Chavez, Torres and the wiretap recordings. Among other things, Chavez testified that she had discussed her continuing problems with Torres with

---

(e) His character for honesty or veracity or their opposites.

(f) The existence or nonexistence of a bias, interest, or other motive.

(g) A statement previously made by him that is consistent with his testimony at the hearing.

(h) A statement made by him that is inconsistent with any part of his testimony at the hearing.

(i) The existence or nonexistence of any fact testified to by him.

(j) His attitude toward the action in which he testifies or toward the giving of testimony.

(k) His admission of untruthfulness.

Cal. Evid. Code § 780.

10cv0423

Brooks and Buchanan on August 25, 2004.   She told Buchanan that Torres was threatening to report Chavez's relationship with Brooks to correctional department officials.  (Lodgment No. 21, vol. 1 at 95-97.)  Buchanan called Chavez on her cell phone later that day, and at the same time, Torres called her home phone.  Chavez put Torres on speaker phone so Buchanan could hear what Torres was saying.  Buchanan yelled "Triste," followed by angry profanity.  Buchanan told Chavez to hang up and that he and another individual would come talk to her.   Chavez knew Buchanan was a "big homie" in the Mexican Mafia and she assumed Torres would be beaten for disobeying his orders.  (Lodgment No. 30, vol. 6 at 533-38.)

Eventually, Buchanan and Parraz arrived at her house. While they were there, Torres called Chavez and Buchanan took the phone from her and said, "This is the Big Homie. Man to man I want to talk to you."  Chavez believed Torres gave Buchanan his address.  (*Id.* at 543-44.)  She stated that when she did not hear from Torres later that day, she was worried because she wanted him to leave her alone but she did not want him killed.   Finally, she got a call from Buchanan, who then put Torres on the phone. Torres told her he would not bother her anymore. (*Id.* at 549-51.)

Torres testified that when he received a call from Brooks and Buchanan, telling him to leave Chavez alone, he did not believe it was the Big Homie Buchanan.  If he had, he would not have disobeyed his direct order because he knew that if he did, he would be "smoked." (Lodgment No. 31, vol. 7 at 698-702.) On August 25, 2004, Torres called Chavez and she put Buchanan on the line.  Buchanan asked Torres if he knew who he was, and stated, "I'm the man you gave your word to." (*Id.* at 710.) He gave Buchanan the address where he had been staying. After the call, he began to worry that this probably was the Big Homie, and he was "pretty sure he was going to get smoked." When Buchanan and Parraz arrived, Buchanan asked Torres if he knew "what happens if you give a big homie your word and don't keep it." (*Id.* at 716.) At one point Parraz flashed a gun and said "if your family wasn't here, I'd smoke you." (*Id.*)  Torres stated he believed he had been "green-lighted" for disobeying Buchanan. (*Id.* at 740.)

After searching Torres' pockets and establishing he did not have any money, Buchanan and Parraz asked if he had any connections they could tax.[10]   Torres called a connection and made plans with to meet him to set up a tax arrangement, hoping that by doing so, Buchanan would show him leniency. (*Id.* at 724.)  The three left to meet Torres' connection.

This is just a brief portion of the testimony of Chavez and Torres but it illustrates the case against Buchanan was dependent on them. Their testimony is corroborated by the numerous wiretap conversations. As for the gun and drug possession charges, Nunez testified that after the stop, Buchanan refused to stand up and kept his knees pressed together as he fell out of the car.  Nunez later discovered a gun in Buchanan's shorts. (*Id.* at 989-90.)   Methamphetamine was found inside a fanny pack Buchanan was wearing. (*Id.* at 1045.)   There was also videotape of Nunez handcuffing Buchanan, searching him, and finding the gun. (*Id.* at 988-91.)

In sum, even considering all of the purported false statements collectively and assuming they were false, Buchanan has not shown "a reasonable probability that . . . the result of the proceeding would have been different.'" *Jackson v. Brown*, 513 F.3d 1057, 1076 (9th Cir. 2008) (emphasis omitted). Even if the jury had been convinced that McIvor committed perjury with regard to some of the specifics of the stop, the result would have been the same.  There was more than enough evidence supporting the charges and McIvor's alleged testimony about the stop of Buchanan's car would not have undermined that evidence in any significant way. *See Sivak v. Hardison*, 658 F.3d 898, 914 (9th Cir. 2011).  The state court's conclusion that Buchanan failed to show prejudice is not contrary to, or an unreasonable application of, clearly established law. *Williams*, 529 U.S. at 412-13.

Therefore, to the extent the Report reviews Buchanan's claims de novo, it is **MODIFIED**.  In all other respects, the Court **OVERRULES** Petitioner's Objections and

---

[10] A primary activity of the Mexican Mafia is to tax drug dealers who are forced to pay a portion of their proceeds to the Mexican Mafia. (*See* Lodgment No. 31, vol. 7 at 723-24 *see also* Lodgment No. 33, vol. 9 at 1189.)

10cv0423

1   **ADOPTS** the findings and conclusions of the Report.  The claim is **DENIED**.

2                 *b.*     *Translations of Wiretap Conversations*

3        Buchanan argues inaccurate translations of wiretap conversations were admitted

4   into evidence.  (Pet. at 6, ECF No. 40; Pet. Attach. C at 6-8, ECF No. 40-1.)  As the

5   Magistrate Judge noted, Buchanan points to two specific phrases in his Petition, both of

6   which are found in the transcript of an August 21, 2004 wiretapped telephone

7   conversation between Buchanan and Brooks ("tape 776").  (Report at 24-25; *see also*

8   Pet. at 8, ECF No. 40.)  First, in the transcript Brooks states, "I have a person that, that,

9   that, watches other the business I have there."  (Lodgment No. 21, vol. 1 at 21.)

10  Buchanan claims the term "business" is an incorrect translation.  Instead, he argues it

11  should read, "I have a person here that takes care of me with what I got, her issues." (*See*

12  Lodgment 12, Attach. C, Ex. 17 at 9.)  In the other instance referenced in the Petition,

13  the transcript reports Brooks telling Buchanan, "I wanted to talk to him first and if, if he

14  doesn't behave all right, he's fucked, and then I'll let you get at him, uh, later."

15  (Lodgment No. 21, vol. 1 at 24.)  Buchanan argues the correct translation is, "if he

16  doesn't behave then it's like all right, I know I crapped and then I'll let you get at him

17  later."  (*See* Lodgment 12, Attach. C, Ex. 17 at 9.)

18       The superior court addressed this claim and denied it, stating:

19            Petitioner fails to make a prima facie showing that the prosecution
20  deliberately falsified language included in the transcription of a tape
    recording, which was equally available to both the prosecution and defense.
    Portions of the tape recording were apparently barely audible or inaudible.
21  Petitioner's claim of prosecutorial misconduct by deliberately falsifying
    language in the transcription of the recording is speculative and conclusory,
22  and is, therefore, denied.  The court also finds that the language in issue did
    not dramatically alter the overall context of the transcribed conversation,
23  or negate the existence of other corroborating evidence.  It is not reasonably
    probable that a different trial outcome would have resulted had the
24  language in question been excluded from the transcript presented to the
    jury.  Any error in presented the disputed language or arguing it to the jury
25  was harmless.

26  (Lodgment No. 11 at 13-14.)

27       As discussed in the Report, there is no question there was some dispute as to the

28  proper translation of certain portions of the wiretapped conversations.  During trial,

defense counsel requested review of the translations of the wiretap calls. (Lodgment No. 34, vol. 10 at 1311.)  He gave the prosecutor two transcripts that "Mr. Buchanan was concerned about which have handwritten suggestions in them." (*Id.* at 1312.)  The prosecutor reviewed the changes and eventually, both counsel agreed to some modifications, although it is not clear if and specific changes sought by Mr. Buchanan were made. (*Id.* at 1320-21.) Buchanan points out that after his trial, the prosecution stipulated to revised translations suggested by Brooks, who was representing himself in a separate trial. (Lodgment No. 12, Attach. C, Ex. 18.)

Assuming the translations Buchanan complains about are inaccurate, Buchanan has not shown the prosecutor knew or should have known. *See Zuno-Arce*, 339 F.3d at 889.  The record reflects nothing more than honest disagreement about the proper transcription of recorded conversations that took place in Spanish and English and were often difficult to hear. (*See* Lodgment No. 34, vol. 10 at 1311-21.) Moreover, Buchanan has not shown the evidence was material.  The altered versions offered by Buchanan do not change the general context of the conversations, which was that Chavez was a connection in the prison and Triste was threatening her.  And as noted in the Report, although Buchanan's translation of the first phrase omits the word "business," a few seconds later, Brooks again describes Chavez as a person who "helps me out with my business inside." (Lodgment No. 21, vol. 1 at 21.)  Likewise, assuming Brooks' comment should have been translated, "I crapped" instead of "he's fucked," Petitioner has not shown a reasonable likelihood the jury could have been affected. *See Hayes*, 399 F.3d at 984.  In context, the general sentiment was not altered in a material way.  In Buchanan's translation, Brooks is stating that he wanted to try to talk to Triste first, but that if he failed to persuade Triste to leave Chavez alone, he would then ask Buchanan "get at him." (*See* Lodgment No. 21, vol. 1 at 20-22.)  Although the transcript admitted into evidence included a more vulgar term and referred to Triste, the overall impression of the statement in the context of the entire conversation is consistent.  As such, Buchanan has not shown a reasonable likelihood that the judgment of the jury could have

10cv0423

been affected.  *See Sivak v. Hardison*, 658 F.3d 898, 914 (9th Cir. 2011); *see also Hayes*, 399 F.3d at 985

Buchanan argues in his Objections that the Magistrate Judge erred in "isolating [his] claim to only two phrases." (Obj. at 38.)  In his Petition, however, the two phrases addressed in the Report are the only specific inaccurate translations cited by Buchanan. (*See* Pet. at 6.)  Among the many exhibits attached to his Petition, he includes a motion for a new trial filed in the state court, which lists other corrections made to the transcription, which he claims were admitted at Brooks' trial. (Pet. Attach. C, Ex. 17 at 9-11.)  None of these additional revisions alter the meaning of the statements in any significant way.  For instance, in the original translation of the August 21, 2004 conversation between Brooks and Buchanan, Brooks states: "And if he's like, 'I don't give a fuck,' if he gets tough, all right, I'll say 'All right, homie I'm going to have [unintelligible], you know what I mean.'"  In that portion of the revised translation, Brooks states "If [Triste] is like I don't give a fuck and puts on a face," he would tell Torres "I'm going to have somebody get at you." (Pet. Attach. C, Ex. 17 at 9.)   The revised translation does nothing to alter the overall meaning of what Brooks was saying. In fact, the originally unintelligible portion, included in the revisions, is entirely consistent with prosecution's argument that Brooks was planning on talking to Torres about Chavez, but if that did not work, he was going to have Buchanan speak to him.

Buchanan also argues in his Objections that the "Magistrate Judge's statement that the case rested almost entirely on the wiretaps and the testimony of Chavez and Torres is incorrect" because of the "manipulation" of the wiretap evidence.  He specifically complains about the translation of a portion of a phone conversation between himself and an individual named Corrado, which took place shortly before Buchanan met with Torres.   In the transcript, Buchanan states "I'm going to talk to him personally [unintelligible].  We'll see." (Lodgment No. 21, vol. 1 at 131.)  Buchanan claims the unintelligible portion should have been translated "so ain't nothing going to happen." (Lodgment No. 12, Attach. F, Ex. 17 at 11.)  Even assuming the revised translation is

10cv0423

accurate, Buchanan has not shown a reasonable likelihood that the introduction of the original transcriptions could have affected the judgment of the jury. *See Hayes*, 399 F.3d at 984. During that conversation, he also mentions that Chavez told him Torres had "25 guns." Later, he states that "if he gets out of line, well. . . you know, anything goes . . . . We're prepared, no problem, you know?" The other revisions contained in the exhibit are similarly insignificant, containing only minor alterations to isolated phrases and adding translations for brief portions that were deemed "unintelligible" in the original transcription. Even assuming the complete revised translations were presented at trial, Chavez and Torres' testimony was not inconsistent with the wiretap evidence. Buchanan has not shown the result would have been different. *See Jackson*, 513 F.3d at 1076. Having reviewed all of the revised translations carefully, the Court finds Buchanan has not shown prejudice. *See id.*

Buchanan also complains the Magistrate Judge erred in pointing to a later use of the term "business" in the transcript to show that the instance cited by Buchanan was not prejudicial. He appears to claim that the term "business" was entirely omitted in the revised translations. However, the list included in the motion for a new trial, does not include corrections to later uses of the term business. (*See* Pet. Attach. C, Ex. 17 at 9-11.) And even if the term "business" was eliminated entirely, there are numerous other references to Chavez as being their "connection" in the prison (Lodgment No. 21, vol. 1 at 21, 24); a "gold mine" (*id.* at 25); that she was doing them a "big ass favor" (*id.* at 63); and "working with [them]" and that Torres was "sabotaging" things with her. (*Id.*) This supports the general theory that Chavez was considered by Brooks and Buchanan, to be an asset to the Mexican Mafia. Accordingly, even assuming the translations did not include the term business, Buchanan has not shown a reasonable likelihood the jury verdict could have been affected. *See Hayes*, 399 F.3d at 984.

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *Williams*, 529 U.S. at 412-13. Therefore, to the extent the Report reviews Buchanan's claims de novo, it is **MODIFIED**. In all

10cv0423

1  other respects, the Court **OVERRULES** Petitioner's Objections and **ADOPTS** the

2  findings and conclusions of the Report.  The claim is **DENIED**.

3        *4.*      ***Prosecution's Failure to Disclose Evidence (Claim Four)***

4        In ground four, Buchanan alleges the prosecution withheld exculpatory and

5  favorable impeachment evidence, in violation of his due process rights.  (Pet. at 9, ECF

6  No. 40; Traverse at 18-19, ECF No. 77.)  The applicable law is summarized in the

7  Report.  (Report at 27.)  In short, a prosecutor's failure to disclose favorable evidence

8  to an accused "violates due process where the evidence is material either to guilt or to

9  punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v.*

10  *Maryland*, 373 U.S. 83, 87 (1963).  To establish that the government's failure to turn

11  over evidence violates *Brady*, Buchanan must demonstrate (1) the evidence was

12  suppressed by the government either willfully or inadvertently;  (2) the evidence was

13  favorable to the accused because it was either exculpatory or impeaching; and (3)

14  prejudice resulted from the failure to disclose.  *See Strickler v. Greene*, 527 U.S. 263,

15  280-81 (1999).

16        *a.*      *Records Related to Torres*

17        Buchanan argues records concerning Torres' prison disciplinary history, mental

18  health and prison housing, and parole were withheld by the prosecution.  He claims all

19  of these records could have helped impeach Torres.  The superior court rejected this

20  claim, noting that records maintained by the California Department of Corrections and

21  Rehabilitation (CDCR) in the regular course of business are not available without a court

22  order, and as such they were not in the possession of the prosecutor.  Moreover, the

23  defense was permitted to pursue the records by serving a subpoena duces tecum on the

24  CDCR.  Finally, the superior court concluded that Buchanan failed to show prejudice.

25  (Lodgment No. 11 at 11-12.)  Although the Report reviews these claims de novo, this

26  Court must determine whether the state court's decision was contrary to, or an

27  unreasonable application of, clearly established law.  *See Williams*, 529 U.S. at 412-13.

28

The Report properly concluded that Buchanan has not shown the prosecutor suppressed these records because there is no evidence he was in possession of them. *See* DOM § 71010.11.2 ("inmate records shall not be released to any agency or person outside the Department without a court order); § 71010.8.3 (parole records are maintained by the assigned parole agent). (*See* Report at 28, 29-30.)

In his Objections, Buchanan again asserts, as he does in his Petition, that the prosecutors had an obligation to "turn over all information bearing on [Torres'] credibility . . . including [his] criminal record, including prison records and any information that bears on credibility." (Obj. at 43.) This is merely a rehash of the same speculative conclusory arguments raised in the Petition and addressed in the Report.

First, Buchanan has not shown the evidence would have been favorable to his defense. He simply speculates that the records *might* have contained impeachment material. *See Agurs*, 427 U.S. at 109-10 (holding that the mere possibility that undisclosed information might have helped the defense, or might have affected the outcome of the trial, is insufficient to establish materiality in the constitutional sense). Here, Buchanan submits incomplete portions of some of Torres' prison medical records, which indicate that Torres was depressed and anxious at times, was on antidepressants at some point during his incarceration and that he attempted suicide once in 2002. (Lodgment No. 12, Attach F, Ex. 12 at 10-13.) In one report, the psychiatrist describes Torres as suffering from a mood disorder but concludes it is not significant enough to require "enhanced outpatient care [EOP]." (*Id.* at 13.) Even assuming the documents contain impeachment material, Petitioner has not shown prejudice because Torres was thoroughly cross-examined and impeached at trial. The jury heard testimony about his significant long-term drug use, his prior crimes, parole violations, his depression and the treatment he received for it in prison, as well as his placement in the EOP. (Lodgment No. 32, vol. 8 at 762-85.) Therefore, Buchanan has not shown prejudice. *Strickler*, 527 U.S. at 280-81.

Thus, as the Report concluded, Buchanan has not established the prosecutor suppressed exculpatory or impeachment material, in violation of his due process rights. *See id.* at 281-82.  As such, the state court's denial of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established law.  *Williams*, 529 U.S. at 412-13. To the extent the Report reviews this claim de novo, it is **MODIFIED**. In all other respects, Petitioner's Objections are **OVERRULED** and the Report's findings and conclusions as to this claim are **ADOPTED** in full.  The claim is **DENIED**.

> b.  *Wiretap Interview of Chavez*

Buchanan claims the prosecutor failed to turn over wiretap evidence of interviews with Chavez conducted by Detective Gutierrez.  (Pet. at 9, ECF 40; Traverse at 18-19.) He provides a single paged document which appears to be a portion of a transcribed interview Gutierrez conducted with Chavez.  Although Buchanan raised this claim in his petition for habeas corpus to the superior court, it is not specifically addressed in that or any other state court order denying relief.  Therefore, this court must conduct an independent review of the record to determine whether § 2254(d) has been satisfied. *See Himes*, 336 F.3d at 853.

As the Report noted, the origin of the page submitted by Buchanan is not clear. There is also nothing on the document indicating when the interview took place.  It depicts an exchange during which Gutierrez is asking Chavez if she knew Buchanan was a Mexican Mafia member.  She responds "And associ . . . yeah, a member, yeah. Associate." Gutierrez seems somewhat incredulous and states "But . . . well, everybody knew he wasn't an associate.  Everybody knew he was a member. There's a difference." (Lodgment No. 12, Attach. F, Ex. 13.)   As the Report concluded, nothing in this brief exchange shows Gutierrez coerced or coached Chavez.  In addition, Buchanan has provided no evidence to show that other tapes would provide impeachment or exculpatory evidence.  He merely speculates it might have been exculpatory.  Buchanan has not shown prejudice for the same reasons. *See Downs v. Hoyt*, 232 F.3d 1031 (9th Cir. 2011) (finding Petitioner's speculative claims failed to show that production of the

materials would have created a reasonable probability of a different result); *see also Stickler*, 527 U.S. at 281-82. The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Himes*, 336 F.3d at 853. To the extent the Report reviews this claim de novo, it is **MODIFIED**. In all other respects, the Court **OVERRULES** Petitioner's Objections **ADOPTS** the Report and **DENIES** the claim.

### 5. *Judicial Bias (Claim Five)*

In claim five, Petitioner alleges several instances of judicial bias. (Pet. at 10, ECF No. 40; Pet. Attach. C at 13-16, ECF No. 40-1.) The Report concluded there was no judicial bias and Buchanan was not denied a fair trial. (Report at 31-44.) Buchanan does not raise any specific objections to the Report's conclusions as to ground five.

Buchanan raised this claim in his petition for habeas corpus to the California Court of Appeal. (Lodgment No. 12.) The California Supreme Court denied Buchanan's petition for review of the denial of that petition, without comment or citation. (Lodgment Nos. 19, 20.) Accordingly, because there is no reasoned state court decision addressing this claim, this Court will conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Himes*, 336 F.3d at 853. To the extent the Report reviews the claim de novo, it is **MODIFIED.**

As the Report stated, a criminal defendant has the right to a fair and impartial tribunal. *In re Murchison*, 349 U.S. 133, 136 (1955). To succeed on such a claim, however, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). A petitioner may show judicial bias in one of two ways, by demonstrating the judge's actual bias or by showing that the judge had an incentive to be biased sufficiently strong to overcome the presumption of judicial integrity. *See Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir. 1994).

10cv0423

On habeas corpus review, the relevant inquiry is not whether the trial judge committed judicial misconduct, but rather, "whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995). "Neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'" *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994).)

### a. Shackling and Security Measures

Buchanan claims the trial judge was biased when he instituted heightened courtroom security measures and ordered Petitioner shackled during the proceedings. He also claims the judge showed bias when he refused to permit defense counsel to review a report which provided the basis for the judge's security concerns. (Pet. at 10, ECF No. 40; Pet. Attach. C at 13, ECF No. 40-1.) As discussed in the Report, the judge held a hearing before the trial began to consider defense counsel's motion to limit security measures and the shackling of Buchanan. (Lodgment No. 23, vol. 3 at 698-711.) During the hearing, the judge stated that he had reviewed reports from the Sheriff's Department, which he ordered sealed because some information contained in them "could put people at risk." (*Id.* at 172.) These reports detailed Buchanan's past history of violence and escape convictions, his high rank in the Mexican Mafia prison gang, and recommended the use of "unobtrusive restraints" for Buchanan, throughout the trial. (Lodgment No. 12, Ex. 1 at 1-7.) One incident report contained information that Buchanan had been overheard telling his cell mate that he could easily escape during transport because leg chains had not been used on him. (*Id.* at 7.)

The Report noted that in making his ruling, the trial judge summarized much of the information contained in the sealed reports. He stated that he based his decision on Buchanan's prior history of escape attempts, assaults with other inmates, a series of confrontations with Sheriff Department staff, his classification as a "level 6 maximum

assaultive escape risk," and his numerous priors.  (Lodgment No. 27, vol. 3 at 169-72.)
He concluded that based on these findings, Buchanan should be shackled by the ankles
to bolts in the floor, during the trial.  He noted that the chains would not be visible to
jurors and that they would make little noise because they would be plastic-coated chains.
(*Id.* at 171.)  He also considered a request from the prosecution that the defendants not
be permitted to stand during the trial. The judge declined to grant that request at the
hearing, and noted that if he did ultimately prohibit the defendants from standing when
the jury entered and exited, than no one, including attorneys, would be permitted to
stand.  (*Id.* at 176-77.).

As for other courtroom security, Sheriff Department policy required a minimum
of two deputies per defendant, and at the time, Buchanan was to be tried along with
Brooks and Parraz.[11]  The trial judge granted a request made by Parraz's counsel that the
number of armed deputies be limited to seven, two of whom would not be in the
courtroom.  (*Id.* at 174.)

Finally, the trial judge considered a request from Parraz's counsel that the contents
of the confidential reports, which the court considered during the hearing, be made
available to the defense.  The judge stated that he was inclined to allow defense counsel
only to look at the documents, with the understanding that the contents "not be disclosed
to anyone, not investigators, not anybody."  *Id.* at 177.  It is unclear from the record,
however, whether defense counsel did review the documents. Regardless, as stated
above, a great deal of the information in the reports was summarized by the judge on the
record.  (*Id.* at 169-72.)

Having reviewed the reports, the judge's sealed order, and the transcripts, the
Court agrees with the Report's conclusion that nothing in the record suggests the trial
judge was biased.  Indeed, the record reflects a judge who sought to balance the need for
courtroom security and the defendants' rights to a fair trial.  That the trial judge ruled

---

[11]  Brooks was ultimately severed from the case and Buchanan and Parraz were tried together.
(*See* Lodgment No. 29, vol. 5 at 310-11.)

10cv0423

adversely to Buchanan and the other defendants in some instances, does not suggest judicial bias in this case. *See Liteky*, 510 U.S. at 555. The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Himes*, 336 F.3d at 853. To the extent the Report reviews the claim de novo, it is **MODIFIED**, the Court **ADOPTS** the Report's finding and conclusions in all other respects and **DENIES** the claim.

### b.    *Alleged Derogatory Remarks*

Petitioner asserts his right to a fair trial was violated when the trial judge referred to the jury as "idiots" and, on another occasion, said Buchanan was "pimping" his attorney. (Pet. Attach C. at 13, ECF No. 40-1.) As to Buchanan's claim that the judge referred to the jury as "idiots," like the Magistrate Judge, this Court has reviewed the record and can find no such remark. As to "pimping" remark, the Report found that the comment came during discussion (which took place outside the presence of the jury) regarding jury instructions, specifically related to the gun possession charge. The trial judge stated that certain standard language could be removed because "we are not talking about multiple firearms, right?" The prosecutor then agreed that language should be removed because "[the] defense is [he was] in momentary possession or justifiable possession, unless [Buchanan's counsel] is advancing one of those." Navarro's defense attorney then added, "momentarily slipped into his skivs." The trial judge stated "I'm surprised he hasn't pimped you to do that." Defense counsel responded, "Actually, he has." (Lodgment No. 34, vol. 10 at 1352.) As stated in the Report, while the judge's comment was perhaps inappropriate, when viewed in context, it amounted to no more than a poor attempt at humor with the attorneys after a long day. As discussed above, "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Liteky*, 510 U.S. at 555. Buchanan has not shown that the judge's "behavior rendered the trial so fundamentally unfair as to violate federal due process." *Duckett*, 67 F.3d at 740. The state court's denial of this claim was neither contrary to, nor an

unreasonable application of, clearly established federal law. *See Himes*, 336 F.3d at 853. To the extent the Report reviews the claim de novo, it is **MODIFIED**. The Court **ADOPTS** the Report's findings and conclusions in all other respects and **DENIES** the claim.

c.   *Gang Expert Testimony*

Buchanan claims the judge was biased against him when he allowed two gang experts to testify against him at trial. (Pet. Attach. C at 13, ECF No. 40-1.) Before trial, defense counsel made a motion to limit gang expert testimony. (Lodgment No. 30 at 346.) As noted in the Report, during the hearing, the judge asked the prosecutor whether the two experts he sought to call would be testifying as to different things. (*Id.* at 348.) The prosecutor explained that the first, Steve Contreras of the California Department of Corrections and Rehabilitation, would testify more generally about the history of the Mexican Mafia, his experience with the Mexican Mafia both inside and outside the prison system, and the relationship between street gang members and the Mexican Mafia. In addition, because Contreras also had specific knowledge regarding Brooks, he would testify that he believed Brooks was a Mexican Mafia associate of Buchanan's. The second witness, Detective Mike Gutierrez of San Diego Police Department, had specific knowledge of the case. He would testify about the relationship between San Diego street gangs and the Mexican Mafia, and explain the predicate acts necessary to prove the gang enhancement allegations against the defendants. (*Id.* at 349.) Both witnesses testified at trial consistently with the prosecutor's proffer. (*See* Lodgment No. 30, vol. 6 at 365-48; vol. 9 at 1177-1210.) The trial judge's reasoned decision to permit two experts to testify does not indicate bias against Buchanan. *See Liteky*, 510 U.S. at 555 (stating that "judicial rulings alone almost never constitute [a] valid basis for a bias or partiality motion"); *see also People v. Hernandez*, 33 Cal. 4th 1040, 1047-48 (Cal. 1997) (holding the prosecution may utilize expert testimony about gang culture and habits to establish the elements of a gang allegation).

/ / /

34

1    Buchanan has not shown that permitting the testimony of two gang experts

2    "rendered the trial so fundamentally unfair as to violate federal due process." *Duckett*,

3    67 F.3d at 740.  The state court's denial of the claim was neither contrary to, nor an

4    unreasonable application of, clearly established federal law. *See Himes*, 336 F.3d at 853.

5     The Court **MODIFIES** the Report to the extent it reviews this claim de novo, and in all

6    other respects, **ADOPTS** the findings and conclusions and **DENIES** the claim.

7                    d.    *Disputed Wiretap Translations*

8    Buchanan contends the trial judge was biased when he "turned a blind eye" to

9    disputes regarding the translation of wiretap transcripts. (Pet. Attach. C at 13-14, EFC

10    No. 40-1.) As discussed in detail in the Report, there were several discussions regarding

11    the wiretap translations over the course of the proceedings. (Report at 37-38.)  During

12    trial, defense counsel requested that a few changes be made to the transcript.  He

13    provided the prosecution with a copy of the proposed modified transcripts for review.

14    The judge stated, "If you can't agree [on the modified version], you are going to have to

15    call an expert for the defense, or whoever your interpreters were that reviewed it to say

16    that they believe that's what it says." (Lodgment No. 34, vol. 10 at 1311.)  It appears

17    from the record that the following day, both counsel agreed to a modified version and

18    the court ordered the original transcripts collected from the jury and the modified version

19    be distributed. (*Id.* at 1319-20.)

20    After his conviction, Buchanan complained to the judge that defense counsel had

21    failed to submit altered transcripts of two phone calls.  This claim was also presented in

22    a motion for a new trial as an ineffective assistance of counsel claim. (*See* Attach. C, Ex.

23    17.) The trial judge denied the motion, concluding that even if the altered transcripts had

24    been admitted, there was not a reasonable likelihood that the outcome of the trial would

25    have been different.  He also found that defense counsel's decision not to submit the

26    modified transcripts might have been a tactical decision in order to avoid a "battle of the

27    experts." (*Id.* at 1679-80.)

28

10cv0423

1    As the Report found, there is nothing in the record to suggest that the judge was

2    biased with regard to admission of wiretap translation transcripts.  He ordered transcripts

3    replaced with altered versions at the request of defense counsel.  And to the extent

4    defense counsel failed to introduce modified versions of two specific phone calls, the

5    judge's decision to deny his ineffective counsel claim was not "behavior rendered the

6    trial so fundamentally unfair as to violate federal due process." *Duckett*, 67 F.3d at 740.

7    The state court's denial of the claim was neither contrary to, nor an unreasonable

8    application of, clearly established federal law.  *See Himes*, 336 F.3d at 853.  The Court

9    **MODIFIES** the Report to the extent it reviews this claim de novo, and in all other

10   respects, **ADOPTS** the findings and conclusions and **DENIES** the claim.

11                    *e.    Denial of Marsden Motions*

12   Petitioner alleges the judge was biased when he denied his *Marsden* motions.[12]

13   (Pet. Attach. C at 14-15, ECF No. 40-1.)  As discussed in the Report, and upon review

14   of the sealed *Marsden* hearing transcripts, there is nothing to suggest the trial judge's

15   denial of the motion was based on bias.  *See Liteky*, 510 U.S. at 555.  The state court's

16   denial of the claim was neither contrary to, nor an unreasonable application of, clearly

17   established federal law.  *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report

18   to the extent it reviews this claim de novo, and in all other respects, **ADOPTS** the

19   findings and conclusions and **DENIES** the claim.

20                    *f.    Instructing the Jury Regarding Shackles*

21   Buchanan claims the judge's failure to admonish the jury after some members saw

22   him in shackles constituted judicial bias.  (Pet. Attach C. at 15, ECF No. 40-1.)  The

23   Report found that during the trial, Buchanan and Parraz reported that they had been seen

24   by one or more jurors as they were being led into the courtroom in shackles.  The bailiffs,

25   however, stated that he had not seen any jurors at the time.  The trial judge assured the

---

26

27   [12] *People v. Marsden*, 2 Cal.3d 118 (1970) requires the trial court to give "a party an opportunity
     to present argument or evidence in support of his contention" requesting substitution of counsel in a
     hearing outside the presence of the jury. This California rule substantially parallels the one prescribed

28   by the Ninth Circuit in *Hudson v. Rushen*, 686 F.2d 826, 829 (9th Cir.1980).  *See Chavez v. Pulley*, 623
     F. Supp. 672, 687 n. 8 (E.D. Cal. 1985).

parties that he would speak to security officials and ensure that it "doesn't happen again, if it happened at all." (Lodgment No. 34, vol. 10 at 1214-15.)  The Report properly concluded that, although the judge did not admonish or instruct the jury regarding the matter, this does not indicate judicial bias.  Given the contradictory statements from defendants and the bailiff, it was not clear whether the jurors had actually seen the shackles.  Moreover, to admonish the jury might have served only to highlight the matter. As such, Buchanan has not established judicial bias as to this claim.  *See Duckett*, 67 F.3d at 740.  The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report to the extent it reviews this claim de novo, and in all other respects, **ADOPTS** the findings and conclusions and **DENIES** the claim.

g.     *Post-Verdict Juror Contact, Severance of Co-Defendant Brooks*

Next, Buchanan argues the judge was biased when he refused to disclose juror contact information after the verdict and when he decided to sever Brooks from the case and grant Brooks a continuance. (Pet. Attach. C at 15. ECF No. 40-1.)  First, the Report found that the trial judge considered and denied defense counsel's post trial request to disclose the names of jurors who had filled out questionnaires. He provided several reasons for his decision on the record including the lack of evidence to support Buchanan's allegation that the jury panel was not representative of the community, that there was no objection to the panel prior to it being sworn, and that there was no evidence of systematic exclusion of a cognizable group. (*See* Lodgment No. 36, vol. 12 at 1652.)  The Report properly concluded that Buchanan has failed to show evidence of judicial bias.  *See Larson*, 515 F.3d at 1067.

Second, Buchanan complains that the judge was biased when he severed Brooks from the case and granted him a continuance.  As discussed in the Report, Brooks had recently begun representing himself and had asked for a continuance to interview witnesses, review transcripts, and seek additional discovery.  Buchanan and Parraz joined the motion at the hearing.  After a long discussion involving Brooks' specific

requests, the judge granted the continuance as to Brooks, denied it as to Buchanan and Parraz, and severed the case. (Lodgment No. 29, vol. 5 at 276-311.)  He explained that his decision to grant Brooks' request for a continuance not based on any allegations of newly discovered evidence alleged during the hearing, but "was only being granted so Mr. Brooks can get himself up to speed and ready to try the case." (*Id.* at 315.)  When Buchanan objected, the judge added, "as far as I'm concerned, both of you have had adequate counsel throughout the case, [and] have had the discovery available." (*Id.* at 316.) The Report properly found that, as with Buchanan's other claims, there was no evidence of bias or partiality "sufficient to overcome the presumption of judicial integrity." *Larson*, 515 F.3d at 1067.  The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report to the extent it reviews this claim de novo, and in all other respects, **ADOPTS** the findings and conclusions and **DENIES** the claim.

> ### h.    Coaching Witness

Petitioner claims the trial judge coached a witness during the hearing on his motion to suppress evidence.  He appears to claim that the judge told Detective McIvor how to answer a question regarding whether officers attempted to enter the house to "save Triste's life."  The Report properly concluded there was no such coaching and that the trial judge was merely explaining why a question was not argumentative and had no effect on Detective McIvor's testimony. (Lodgment No. 27, vol. 3 at 102.)   As such, Buchanan has not overcome the "presumption of judicial integrity." *See Larson*, 515 F.3d at 1067.  The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established federal law. *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report to the extent it reviews this claim de novo, and in all other respects, **ADOPTS** the findings and conclusions and **DENIES** the claim.

/ / /

/ / /

*i.     Speculation Regarding the Traffic Stop*

Finally, Buchanan claims the judge made comments during the suppression hearing which are evidence of judicial bias.  (Pet. Attach. C at 16, ECF No. 40-1.)  As the Report concluded, the judge did nothing but accurately state the law.  Defense counsel argued that the stop was pretextual, and that the officers were simply searching for any reason to pull the car over.  The judge simply stated that the law permitted this as long as there was probable cause to stop the car.  Thus, if the information from the wiretaps, known to officer's at the time, supported probable cause, it would not matter if the stop was "pretextual." (Lodgment No 27, vol. 3 at 127-28.)  The Report correctly noted that an "officer's subjective thoughts play no role in Fourth Amendment analysis. More specifically, the fact that officers acted on one rationale 'would not foreclose the [government] from justifying [the search] by proving probable cause.'"  *United States v. Ramirez*, 473 F.3d 1026, 1030-31 (9th Cir. 2007) (citing *Florida v. Royer*, 460 U.S. 491, 501 (1983); *see also Whren v. United States*, 517 U.S. 806, 811-12 (1996).  Nothing about the judge's comments suggest judicial bias or "behavior [which] rendered the trial so fundamentally unfair as to violate federal due process."  *Duckett*, 67 F.3d at 740. Buchanan has not shown that the state court's denial of the claim was contrary to, or an unreasonable application of, clearly established federal law.  *See Himes*, 336 F.3d at 853.   The Court **MODIFIES** the Report to the extent it reviews this claim de novo, and in all other respects, **ADOPTS** the findings and conclusions and **DENIES** the claim.

**6.     *Courtroom Security Measures and Shackling (Claim Six)***

In his sixth ground for relief, Buchanan argues that his right to a fair trial was violated by the heightened courtroom security measures and his shackling during trial. (Pet. at 11, ECF No. 40; Pet. Attach. C at 17-18, ECF No. 40-1.) The Magistrate Judge concluded that Buchanan failed to establish that the outcome was affected by the security precautions or his shackling.  (Report at 44-47.)  Buchanan does not raise any specific objections to the Report's conclusion regarding these claims.  Because the claim is not procedurally defaulted, this Court reviews the state court's last reasoned decision to

1    determine whether the denial of his claim was contrary to or an unreasonable application

2    of clearly established law.  *See Williams*, 529 U.S. at 412-13.  To the extent the Report

3    reviews the claims de novo, it is **MODIFIED**.

4                    *a.     Courtroom Security*

5           First, with regard to courtroom security, Buchanan complains in his Petition that

6    there was a metal detector outside the courtroom, along with five to ten armed deputies.

7    He also states there were several federal agents and transportation officers from the

8    California Department of Corrections and Rehabilitation in "SWAT-style" attire in the

9    courtroom.  He also alleges a bomb sniffing dog was brought into the courtroom.  (Pet.

10   at 11, ECF No. 40; Pet. Attach. C at 17-18, ECF No. 40-1; Traverse at 19-22, ECF No.

11   77.)  Finally, he claims the jury requested an armed escort from the courthouse after

12   delivering the verdict.  (Pet. Attach. C at 18, ECF No. 40-1.)

13          The San Diego superior court's order denying this claim states:

14                 Prior to trial, the trial court received a memorandum for the Security
                   Deputy, Court Services Bureau, dated February 28, 2009, and incident
15                 reports relating to Petitioner and Parraz. . . . Based upon the information
                   provided, the trial court issued a written Order outlining the security
16                 measures authorized during the trial of Petitioner and Parraz. . . .The
                   manifest need for security precautions and restraints employed for
17                 Petitioner's trial is fully explained in [the reports and the trial judge's
                   order].  Petitioner fails to demonstrate that the court abused its discretion
18                 in this matter. (*See People v. Stevens* (2009) 47 Cal. 4th 625, 634, holding
                   that the use of a metal detector or magnetometer at the entrance of the
19                 courtroom is not inherently prejudicial.)

20    (Lodgment No. 11 at 17-18.)

21          The Report correctly noted the standard for evaluating claims of excessive

22   courtroom security.  First, a court must "look at the scene presented to jurors and

23   determine whether what they saw was so inherently prejudicial as to pose an

24   unacceptable threat to defendant's right to a fair trial." *Holbrook v. Flynn*, 475 U.S. 560,

25   572 (1986).  If the court concludes the measures are not inherently prejudicial, it must

26   next consider whether jurors were actually prejudiced.  *Id.* at 572.

27          There is no indication in the record as to the exact number of deputies inside and

28   outside the courtroom but, based on the trial judge's previous order limiting the number

to seven when there were three co-defendants, it seems likely there were five deputies at trial (after Brooks' case was severed). (*See* Lodgment No. 27, vol. 3 at 174.) There is nothing in the record regarding federal agents or other law enforcement personnel, nor is there any mention of a bomb sniffing dog. Even assuming there were federal agents sitting in the gallery, there is no evidence the jury knew they were law enforcement. Likewise, presuming there was a bomb sniffing canine used, there is no evidence the jury saw it. As discussed in the Report, the Supreme Court found no inherent prejudice when four uniformed troopers were present during proceedings. *Id.* at 569. In addition, in this case the procedures were no more intrusive than those approved by the Ninth Circuit in *Hayes v. Ayers*, 632 F.3d 500, 521-22 (9th Cir. 2011). In that case, spectators (included perspective jurors) were searched with a hand-held metal detector, physically patted down and had their bags searched. There were also three extra deputies assigned to the courtroom and the courtroom door was locked during proceedings. *See id.* Accordingly, the Magistrate Judge properly found that the security measures taken at Buchanan's trial were not inherently prejudicial.

Likewise, Buchanan has failed to show actual prejudice. As discussed in the Report, at the time the jurors submitted their verdicts, they sent a note to the judge expressing concern that personal information from juror questionnaires might be available to the defendants, and asking if "there should be any concern for [their] personal safety." (Lodgment No. 23, vol. 3 at 568.) Although there is no mention of it in the record, Buchanan states that the jurors asked to be escorted from the building. The superior court addressed this allegation and stated "it is also speculation to attribute the jurors' stated concern for personal safety to be based on anything other than the evidence introduced in the case." (Lodgment No. 11 at 18.) The Report properly concluded that Buchanan presented no evidence that the jurors were actually prejudiced *as a result of* seeing the security in the courtroom. *See Holbrook*, 475 U.S. at 569.

As such, the state court's denial of Petitioner's claim was neither contrary to, nor an unreasonable application of, clearly established law. *Williams*, 529 U.S. at 412-13.

To the extent the Report reviews this claim de novo, it is **MODIFIED**.   In all other respects, the Report's findings and conclusions as to this claim are **ADOPTED** in full and the claim is **DENIED**.

> ### b. *Shackling*

Buchanan claims his due process rights were violated when he was seen by one or more jurors in the hallway of the courthouse while being escorted in shackles.   In denying the claim, the San Diego superior court stated, in part:

> To justify restraint, there must be some showing of violence or threat of violence. (*People v. Combs*, (2004) 34 Cal. 4th 821, 837.) . . .Prejudicial error does not occur simply because the defendant 'was seen in shackles for only a brief period either inside or outside the courtroom by one or more jurors or veniremen." (*People v. Tuilaepa*, [(1992) 4 Cal. 4th 569, 583.)]. . . As discussed, there was a manifest need for thorough security precautions in this case. The jurors were undoubtedly cognizant of many of these precautions. The fact that jurors may have seen Petitioner in the hallway would not drastically affect their perceptions regarding the need for security in this case. Petitioner fails to show that the juror's observations of him in the hallway affected his right to a fair trial. (*People v. Cox* (1991) 53 Cal. 3d 618, 652.) Any alleged error in the jurors seeing Petitioner in the hallway was harmless. (*People v. Allen* (1986) 42 Cal. 3d 1222, 1226.)

(Lodgment No. 11 at 17-19.)

The Report identifies the clearly established law regarding shackling. "A criminal defendant has a constitutional right to be free of shackles and handcuffs in the presence of the jury" and "[w]hen a defendant has been unconstitutionally shackled, the court must determine whether the defendant was prejudiced." *Williams v. Woodford*, 384 F.3d 567, 591 (9th Cir. 2004).   However, the Ninth Circuit has made clear that if "the jury never saw the defendant's shackles in the courtroom, . . . the shackles did not prejudice the defendant's right to a fair trial." *Williams*, 384 F.3d at 592 (citing *Castillo v. Stainer*, 997 F.2d 669, 699 (9th Cir. 1993), amended by 997 F.2d 669 (9th Cir. 1993)).   In addition, "[a] jury's brief or inadvertent glimpse of a defendant in physical restraints outside of the courtroom does not warrant habeas relief unless the petitioner makes an affirmative showing of prejudice." *Id.* (citing *Castillo*, 983 F.2d at 148 (finding no prejudice when members of the jury pool saw the defendant in shackles in the court corridor)).

10cv0423

As discussed above, Buchanan's ankles were shackled and chained to the floor during trial, but this was concealed from the jurors with skirt around the defense table. (Lodgment No. 27, vol. 3 at 172.) There is no evidence jurors saw Petitioner shackled at any time during the course of the proceedings. As the state court and Magistrate Judge both found, even assuming some jurors got a glimpse of Buchanan being transported to the courtroom while shackled on one occasion, this alone does not amount to a due process violation or prejudice. *See Castillo*, 983 F.2d at 1148. In sum, Petitioner has not shown the state court's denial this claim was contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412-13. The Court **ADOPTS** the findings and conclusions of the Report and **MODIFIES** the Report only to the extent it reviewed the claim de novo. The claim is **DENIED**.

### 7. *Prosecutorial Misconduct (Claim 7)*

Buchanan raises ten instances of prosecutorial misconduct in his Petition. (Pet. at 12, ECF No. 40; Pet. Attach. C at 19-23, ECF No. 40-1.) Buchanan does not raise any specific objections to the Report's conclusions as to claim seven. As discussed in the Report, it is clearly established that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). A prosecutor commits misconduct when his or her actions "'so infect. . . the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainright*, 477 U.S. 169, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'" *Id.* (quoting *Donnelly*, 416 U.S. at 642). In order to show prosecutorial misconduct for failure to turn over exculpatory evidence, a petitioner must demonstrate (1) the evidence was suppressed by the government either willfully or inadvertently; (2) the evidence was favorable to the accused because it was either exculpatory or impeaching; and (3) prejudice resulted from the failure to disclose. *See Strickler*, 527 U.S. at 280-81.

10cv0423

a.      Torres' Parole Record

Buchanan claims the prosecution provided an outdated parole detail record for Torres in order to conceal the fact that Detective McIvor knew "Triste" was Torres, before the stop on August 25, 2004.  He claims a more recent parole detail record would have shown Torres often went by the moniker "Triste."  (Pet. at 12, ECF No. 40; Pet. Attach. C at 19, ECF No. 40-1.)  The superior court order does include discussion of this specific claim.

As the Report concluded, Buchanan has not shown that the prosecutor was in possession of parole records indicating Torres' also went by "Triste."  As discussed above in section V(B)(4)(a) of this Order, such records may only be released to a party with a court order.  Moreover, Buchanan merely speculates that such reports would, in fact, include information that "Triste" was Torres' moniker.  Accordingly, Petitioner has not shown the prosecutor withheld evidence, or that the report contained exculpatory or impeachment evidence. *See Strickler*, 527 U.S. at 281-82.  Buchanan also has not shown prejudice.  Even assuming such a parole detail report contains information on Torres' moniker, there is nothing to suggest that McIvor had that information before Buchanan's arrest.  *See id.*  The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law.  *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** the findings and conclusions in all other respects and **DENIES** the claim.

b.      Coaching and Coercing Witnesses

Buchanan claims the prosecutor committed misconduct by coercing and intimidating witnesses and coaching their testimony.  (Pet. Attach. C at 19, ECF No. 40-1.)  The state court rejected the claim as "speculative and conclusory," stating that Buchanan made only "general allegations, but cites no specific instances, where a witness's testimony was improperly coerced or influenced by law enforcement."  (Lodgment No. 11 at 15.)  In the Report, the Magistrate Judge thoroughly summarizes each of the exhibits Buchanan points to as support for his claim.  (Report at 50-52.)

First, a narrative report from FBI Agent Ann Murphy contains information that is entirely consistent with Torres' trial testimony concerning events leading up to and right after police stopped the car he was riding in with Buchanan and Parraz. (Lodgment No. 12, Attach. F, Ex. 9.)  There is nothing in this report to suggest Torres was being coached or coerced.

Second, Buchanan points to a portion of a transcript of an interview of an individual named George Presson, by FBI Agents Murphy and Desarno, and Detective McIvor.  At one point, Desarno encourages Presson to cooperate and states that "if you try to play both sides, you're playing with fire on both sides." (Lodgment No. 12, Attach. F, Ex. 10 at 3.)   The court has reviewed the transcript and finds nothing suggesting coercion.  As the Report concluded, it is not even clear how the interview is relevant to Buchanan's case.

Finally, Buchanan again points to the alleged excerpt of an interview between Chavez and Detective Gutierrez discussed above in section V(B)(4)(b) of this Order.  In sum, Buchanan provides nothing more than conclusory allegations to support his claim. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.")  As such, the state court's denial was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412-13.  The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** the findings and conclusions in all other respects and **DENIES** the claim.

> c. *Withholding Evidence of Torres' Relationship with FBI*

Buchanan appears to claim that the prosecution withheld evidence that the FBI recruited Torres. (Pet. Attach. C at 20, ECF No. 40-1.)  The superior court did not specifically address this claim in its order.  As the Report found, Buchanan offers nothing but "conclusory allegations which are not supported by a statement of specific facts." *See James*, 24 F.3d at 26.  As such, the state court's denial was neither contrary to, nor an unreasonable application of, clearly established law. *See Himes*, 336 F.3d 853.

The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** the findings and conclusions in all other respects, and **DENIES** the claim.

> d. *Withholding Witness Interview Recordings, and Torres' Medical, and Parole Records*

Buchanan argues the prosecutor withheld evidence, including interviews with Chavez, other witness recordings, and Torres' medical, psychiatric and parole records. (Pet. Attach. C at 20-21, ECF No. 40-1.) This assertion is merely a rehash of the argument raised in claim four and discussed in section V(B)(4)(a) of this Order. Accordingly, the Court **MODIFIES** the Report to the extent it addresses the claim de novo, and **ADOPTS** it in all other respects, and **DENIES** the claim.

> e. *Failure to Verify Wiretap Translations*

Next, Buchanan alleges the prosecutor committed misconduct when he implied he would be presenting a Spanish language expert as a witness at trial, and failed to do so. (Attach. C at 21, ECF No. 40-1.) The state court concluded Buchanan "failed to make a prima facie case for prosecutorial misconduct." (Lodgment No. 11 at 16.) As discussed above, there was some dispute about the accuracy of the translations. At one point during pre-trial hearings, Brooks complained about the translations and the trial judge noted that he would be free to call his own expert to challenge the accuracy of the transcriptions. (Lodgment No. 34, vol. 10 at 299.) The prosecutor also mentioned that Brooks could cross-examine their language expert. (*Id.* at 393.) At trial, no language expert was called by either side. The prosecutor and Buchanan's defense counsel, however, did stipulate to some modifications to the original translations. (Lodgment No. 34, vol. 10 at 1321-22.) As the Report found, the prosecutor was not required to present a language witness, even if he previously indicated he might. *See United States v. Bond*, 552 F.3d 1092, 1097 (9th Cir. 2009). As such, the state court's denial was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412-13. The Court **MODIFIES** the Report to the extent it reviews

/ / /

the claim de novo and **ADOPTS** the findings and conclusions in all other respects.  The claim is **DENIED**.

### f.     Witness Intimidation

Petitioner claims FBI Agent Desarno intimidated defense witnesses and prevented them from speaking to defense investigators. (Pet. Attach. C at 22, ECF No. 40-1.)  The superior court concluded Buchanan failed to present specific evidence to support his allegations, and denied the claim as "vague and conclusory." (Lodgment No. 11 at 16.) As the Report concluded, the only mention of this in the record is a statement by defense counsel, during a pre-trial hearing on Brooks' motion for a continuance, when counsel alleged that his defense investigator was having difficulty getting witnesses to talk to him because Desarno had told cooperating witnesses not to talk to the defense. (Lodgment No. 29, vol. 5 at 304-05.)  As the Report found, this claim lacks factual support, and Petitioner fails to assert that the alleged intimidation was prejudicial to his case.  *See James*, 24 F.3d at 26. Petitioner also fails to show that the alleged constitutional violations arising from the purported intimidation had a "substantial or injurious effect or influence in determining the jury's verdict." *See Brecht*, 507 U.S. at 631 n.7.   The state court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law.  *See Williams*, 529 U.S. at 412-13. The Court **MODIFIES** the Report to the extent it reviews the claim de novo, and **ADOPTS** the findings and conclusions in all other respects. The claim is **DENIED**.

### g.     Misrepresentations During Closing Argument

Petitioner claims the prosecutor used "known falsehoods" in closing argument to the jury when he stated: "Is there ever a reference to [Mr. Brooks] caring about Ms. Chavez? Is there ever a reference to 'I personally like her. We want to help her out'? No." (Pet. Attach C. at 22, ECF No. 40-1.)  The superior court order does not address this claim specifically.  As such, the court must conduct an independent review of the record to determine whether Buchanan has satisfied § 2254(d).  *See Himes*, 336 F.3d at 853.  In his Petition, Buchanan claims the prosecutor's statement is contradicted by

wiretap conversations which make it clear that Brooks was in love with Chavez. (Pet. Attach C. at 22, ECF No. 40-1.) As discussed in the Report, the prosecutor did argue during closing that Brooks' relationship with Chavez was cultivated because it could be beneficial to the Mexican Mafia. (Lodgment No. 35, vol. at 1491.) This is a reasonable inference based on evidence presented at trial.[13] *See Duckett*, 67 F.3d at 742; *See also Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996). Moreover, Buchanan fails to point to any portion of the record which shows the prosecution misrepresented the evidence. *See James*, 24 F.3d at 26. The state court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law. *See Himes*, 336 F.3d at 853. The Court **MODIFIES** the Report to the extent it reviews the claim de novo, and **ADOPTS** the findings and conclusions in all other respects. The claim is **DENIED**.

### h.   Buchanan's Cell Phone

Petitioner argues the prosecutor improperly used the fact that he had a cell phone, which a police informant had provided him, as evidence that he was a drug dealer. (Pet. Attach. C, 22-23, ECF No. 40-1.)[14] Because there is no reasoned state court decision addressing this claim, the court must conduct an independent review of the record to determine whether Buchanan has satisfied § 2254(d). *See Himes*, 336 F.3d at 853. During McIvor's testimony, the prosecutor asked, "The presence of the money, the scale, the methamphetamine and the pay and owe slip, in your opinion, does that indicate whether or not the narcotics possessed by Mr. Buchanan were possessed for sale?" McIvor responded, "Yes. Just the mere amount of methamphetamine, to me, in my

---

[13] There was evidence on the wiretaps that Brooks and Buchanan saw Chavez as an asset, calling her their "connection" in the prison (Lodgment No. 21, vol. 1 at 21, 24); a "gold mine" (*id.* at 25); stating that she was doing them a "big ass favor" (*id.* at 63); and "working with [them]." (*Id.*)

[14] The superior court interpreted this as a claim of entrapment and denied it because officers did nothing to encourage Petitioner to commit crimes he would not have otherwise committed. (Lodgment No. 11 at 16-17.) The entrapment defense "is not of a constitutional dimension." *United States v. Russell*, 411 U.S. 423, 430-33. It is a court-created limitation on governmental activity. *United States v. Emmert*, 829 F.2d 805, 808 n. 1 (9th Cir. 1987). Accordingly, an alleged misapplication of law relating to entrapment does not raise a cognizable federal constitutional claim. *Noble v. Harrison*, 491 F. Supp.2d 950, 961 n. 7 (C.D. Cal. 2007) (citing *Benson v. Carter*, 396 F.2d 319, 322 (9th Cir. 1968)). As such, to the extent Petitioner is attempting to assert an entrapment claim, it is not cognizable on federal habeas review.

10cv0423

experience, would show that [it is] possessed for sales.  The scale, the pay and owe and the money, the cell phone are just items that would just go on to enforce what I believed."  (Lodgment No. 33, vol. 9 at 1054.)

Nothing in the excerpts of the record Buchanan points to for support, suggest the prosecutor presented evidence or argument at trial that Buchanan's possession of a cell phone alone was evidence he was a drug dealer.  McIvor simply testified that the phone was one of many items found along with the drugs, which, when viewed in context, supported his conclusion that based on the amount of drugs, the methamphetamine was intended for sale.  Buchanan has not shown that his due process rights were violated by prosecutorial misconduct.  *See Darden*, 477 U.S. at 181.  The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law.  *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### i.    Alleged Wiretap of Torres

Petitioner claims the prosecutor suppressed evidence favorable to the defense when he failed to disclose that there had been a wiretap on Torres' phone.  (Pet. Attach. C at 23, ECF No. 40-1.)  The superior court did not address this claim in its opinion.  Therefore, this court must conduct an independent review of the record to determine whether Buchanan has satisfied § 2254(d).  *See Himes*, 336 F.3d at 853.  Buchanan points to a pleading in a motion filed by his defense attorney in a separate federal case, which alludes to a "state wiretap on Ernesto Torres" which had been deemed "not relevant the issues of the federal wiretap."  (Lodgment No. 12, Attach. F, Ex. 15 at 3.)  As the Report concluded, even assuming the evidence was suppressed, Buchanan has not shown that it would have been exculpatory, or that he was prejudiced by its suppression.  *See Strickler*, 527 U.S. at 281-82; *Benn*, 283 F.3d at 1053.  His speculation that there might be something in the purported recordings that could be relevant to his case, is insufficient to support his claim.  *See James*, 24 F.3d at 26.  The state court's denial of this claim is neither contrary to, or an unreasonable application of, clearly established

Supreme Court law. *Himes*, 336 F.3d at 853. The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** this claim.

> ### j.      Cumulative Error

Petitioner claims his due process rights were violated by the cumulative effect of all the alleged instances of prosecutorial misconduct. (Pet. Attach. C at 23, ECF No. 40-1.) The superior court did not address this allegation in his order denying habeas relief. (*See* Lodgment No. 11.) Because the Court has determined there is no merit to the prosecutorial misconduct claims Buchanan has alleged, it follows there was no cumulative error. *Jackson v. Brown*, 513 F.3d 1057, 1085 (9th Cir. 2008) (quoting *Whelchel v. Washington*, 232 F.3d 1197, 1212 (9th Cir. 2000)). Accordingly, the state court's silent denial of the claim was neither contrary to, nor an unreasonable application of clearly established law. *See Himes*, 336 F.3d at 853. Petitioner is not entitled to relief for his cumulative error claim. The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** the Reports finding and conclusions and **DENIES** the claim.

> ### 8.      Admission of Gang Expert Testimony (Claim Eight)

In his eighth ground for relief, Buchanan argues the trial court improperly permitted gang expert testimony at his trial. (Pet. at 13, ECF No. 40; Pet. Attach. C at 24, ECF No. 40-1.) Petitioner also claims defense counsel was ineffective for failing to object to the testimony. As the Report noted, the last reasoned state court decision to address this claim was that of the California Court of Appeal, in its opinion denying Buchanan's direct appeal. *See Ylst*, 501 U.S. at 805-06. The state court analyzed Buchanan's claim at length. It is included in the Magistrate Judge's Report and this Court will not repeat it here. (*See* Report at 57-60.) In sum, the state court concluded that the experts' *opinion* testimony that Buchanan committed crimes against Torres for the benefit of the Mexican Mafia was based on evidence presented at trial, was admissible. The Court found that neither expert had given testimony that established an

element of any crime.  Finally, the court concluded that the experts' testimony was not improperly based on "incompetent hearsay."  (*See* Lodgment No. 7 at 11-20.)

The Report thoroughly reviewed the expert testimony and found the state court properly concluded that both experts' testimony was probative to both the gang allegations and the substantive crimes charged against Buchanan.  (Report at 60-64.) Moreover, the Report concludes that neither witness was permitted to testify to "ultimate facts," but rather they offered their opinions based on their expertise as to whether the crimes had been committed for the benefit of the Mexican Mafia.  (Report at 63-64.) Finally, the Report rejects Buchanan's ineffective assistance of counsel claim, concluding he had not shown counsel's failure to object was unreasonable or prejudicial under *Strickland*, 466 U.S. at 687-89.  (Report at 64.)  Buchanan does not object to these findings.  (*See generally*, Obj.)  Having reviewed the state court's decision and the Report de novo, this Court **ADOPTS** the Report's findings and conclusions as to this claim in their entirety.  The claim is **DENIED**.

### 9.    *Ineffective Assistance of Counsel (Claim Nine)*

In claim nine, Buchanan raises fifteen instances of ineffective assistance of counsel.  The Report properly notes that as to Buchanan's first three sub-claims, the last reasoned state court decision, to which this Court must defer, is the California Court of Appeal's opinion denying Buchanan's claims on direct appeal.  *See Ylst*, 501 U.S. at 805-06.  As for the remaining sub-claims, the last reasoned decision addressing the remaining claims is that of the superior court's order denying habeas relief.  (*See* Lodgment No. 11.)  As such, the Court must determine whether the state court's denial was contrary to, or an unreasonable application of, clearly established law.  *See Williams*, 529 U.S. at 412-13.  The Court therefore **MODIFIES** the Report to the extent it reviews these claims de novo.

As discussed in the Report, it is clearly established that to prevail on a claim of ineffective assistance of trial counsel in federal court, Petitioner must first establish that trial counsel's performance fell below an objective standard of reasonableness.

10cv0423

1  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "This requires a showing that

2  counsel made errors so serious that counsel was not functioning as the 'counsel'

3  guaranteed the defendant by the Sixth Amendment."  *Id.*  Judicial scrutiny of counsel's

4  performance must be "highly deferential."  *Id.* at 689.  Second, he must show counsel's

5  deficient performance prejudiced the defense.  Under *Strickland*, there must be a

6  "reasonable probability that, but for counsel's unprofessional errors, the result of the

7  proceeding would have been different."  *Strickland*, 466 U.S. at 694-95.  A reasonable

8  probability is a probability "sufficient to undermine confidence in the outcome."  *Id.* at

9  694-95; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).

10  A "doubly" deferential judicial review is appropriate in analyzing ineffective

11  assistance of counsel claims under § 2254.  *See Harrington v. Richter*, 562 U.S.___ , 131

12  S.Ct. 770, 788 (2011); *Premo v. Moore*, 562 U.S.___ , 131 S.Ct. 733, 740 (2011) (same).

13  On federal habeas review, "the question is not whether counsel's actions were

14  reasonable, [but] whether there is any reasonable argument that counsel satisfied

15  *Strickland's* deferential standard."  *Richter*, 131 S.Ct. at 788.  The court need not address

16  the performance prong if the claim can be resolved on the ground of lack of sufficient

17  prejudice.  *Strickland*, 466 U.S. at 697.

18          *a.*     *Failure to Object to Admission of Wiretapped Phone Conversations*

19  Buchanan argues defense counsel should have objected to the admission of

20  wiretapped telephone conversations, or sought to have them redacted, pursuant to

21  California Evidence Code section 352 because they were irrelevant and unduly

22  prejudicial.  (Pet. at 14, ECF No. 40.)  Buchanan does not make specific objections to

23  the Report's conclusion as to this claim.

24  The Report reviewed the state court's opinion denying this claim and concluded

25  that Buchanan was not entitled to relief.  (Report at 66-67.)  As noted in the Report, a

26  failure to object cannot be deficient performance or prejudicial under *Strickland* when

27  there is no reasonable likelihood that the objection was meritorious.  *See, e.g. Sanders*,

28  21 F. 3d at 1456 (*Strickland* does not require that trial counsel make futile objections).

1   In short, because the tapes were clearly relevant to establish the elements of the charges

2   against Buchanan, it was neither deficient performance nor prejudicial for defense

3   counsel to refrain from making a futile objection to their admission. *Strickland*, 466 U.S.

4   at 689. Accordingly, the state court's denial of the claim was neither contrary to, nor an

5   unreasonable application of, clearly established law. *See Williams*, 529 U.S. at 412-13.

6   This Court ADOPTS the Report's findings and recommendations, and DENIES the

7   claim.

8                    b.      *Failure to Object to Chavez's Testimony About Gang Terminology*

9           Petitioner claims counsel was ineffective for failing to object to Chavez's

10  testimony about certain terms used by Brooks and Buchanan. Specifically, he argues

11  counsel should have objected to Chavez's testimony that "black" referred to heroin and

12  that referring to someone as having a "green light" on them meant that person could be

13  assaulted. Finally, he claims Chavez should have prevented from testifying about

14  whether other guards at Donovan prison were assisting the Mexican Mafia. (Pet. at 14;

15  Lodgment No. 1 at 72-74.)

16          As correctly noted by the Magistrate Judge, the state court concluded that

17  Buchanan's claim failed because any objection to Chavez's testimony regarding gang

18  terminology would have been futile and additionally, that there was no undue prejudice

19  as a result of the testimony. (*See* Lodgment No. 7 at 28-29.) The Report properly

20  concluded that Buchanan has not established prejudice by any failure to object. *See*

21  *Strickland*, 466 U.S. at 689. Several other witnesses, including both the prosecution's

22  gang experts, Torres, and a defense expert testified that "green light" meant the Mexican

23  Mafia had authorized an assault on a person. In addition, Chavez testified that she had

24  no personal knowledge about other guards assisting the Mexican Mafia. (Lodgment No.

25  30, vol. 6 at 520-21.) As such, her testimony was not unduly prejudicial. Buchanan

26  makes no objection to the Report's discussion of this claim. Having carefully reviewed

27  the Report de novo review, the Court finds the state court's denial of the claim was

28  nether contrary to, nor an unreasonable application of, clearly established federal law.

*See Williams*, 529 U.S. at 412-13.  Thus, the Court **ADOPTS** the Report's findings and conclusions and **DENIES** the claim.

### c.   Failure to Object to Chavez's Testimony About Rape

Buchanan argues trial counsel should have objected to Chavez's testimony about being raped by Torres because it was irrelevant and unduly prejudicial.  (Lodgment No. 1 at 74-75.)  As the Report concluded, the state court properly found that the evidence of Chavez's rape by Torres (and her delay in reporting it to authorities) was damaging to the credibility of both witnesses.  Buchanan offers no specific objections to this conclusion.

The Report properly concluded that Buchanan has not shown defense counsel's performance was deficient or that he was prejudiced as a result.  *See Richter*, 131 S.Ct. at 788; *see also Strickland,* 466 U.S. at 690.  As such, the appellate court did not commit an unreasonable application of clearly established law in denying Petitioner's claim of ineffective assistance of counsel on these grounds.  *See* 28 U.S.C. § 2254(d); *see also Williams*, 529 U.S. at 412-13.  The Court ADOPTS the Report in full, and DENIES this claim.

### d.   Failure to Obtain TAC3 Talkgroup Dispatch Tapes

Buchanan argues trial counsel was ineffective when he failed to "acquire and/or... use" dispatch recordings (TAC3 talkgroup) related to the stop of his car.  (Pet. at 14, Lodgment No. 40, ECF 40; Pet. Attach. C at 30; ECF No. 40-1.)  He asserts that, had defense counsel obtained the TAC3 talkgroup recordings and presented them at his motion to suppress hearing, the motion would have been successful.

Buchanan raised this in his petition for habeas corpus filed in superior court.  (Lodgment No. 13.)  In denying the claim, the court found Buchanan failed to "identify the existence of information that impeached the credibility of the detective's testimony. . . . and he failed to show defense counsel's examination of the detective fell below objectively reasonable levels, or that [he] was prejudiced."  (Lodgment No. 11 at 21.)

10cv0423

The Report concluded that Buchanan has not established prejudice because the TAC talkgroup transcripts do not contradict McIvor's testimony or nullify the probable cause the officers had to stop Buchanan's car, specifically, their belief that Triste's life was in danger. (*See* Lodgment No. 27, vol. 3 at 128-29.)   "[I]n order to show prejudice when a suppression issue provides the basis for an ineffectiveness claim, the petitioner must show that he would have prevailed on the suppression motion, and that there is a reasonable probability that the successful motion would have affected the outcome." *Bailey v. Newland*, 263 F.3d 1022, 1029 (9th Cir. 2001) (citing *Kimmelman*, 477 U.S. at 375).)

In his Objections, Petitioner again argues that if defense counsel had shown that McIvor's statements at the hearing were false "by impeaching McIvor using the dispatch tape . . . taken together, these may very well have tipped the scale in Petitioner's favor" and the motion would have been denied. (Obj. at 40-41.)  These arguments are simply a rehash of the claims raised in the Petition and addressed in the Report.  As discussed above in section V(B)(a) of this Order, although the TAC3 talkgroup transcript does not specifically corroborate all of McIvor's testimony, it does not establish that McIvor testified falsely.  McIvor stated that he relayed the information regarding the threat to Triste and the parolee at large to Nunez via cell phone.  This testimony was corroborated by Officer Nunez and Officer Bilstein.  And there was ample evidence to support probable cause based on McIvor's concern for Torres' safety.  Even assuming defense counsel could have pointed to minor inconsistencies between McIvor's testimony and wiretap recordings of Buchanan's phone conversations that day (such as his statement that Buchanan ordered Torres to stay where he was, and inconsistency about whether Petitioner called Chavez from inside the house (*see* Obj. at 39)), the state court reasonably concluded that Buchanan could not establish prejudice, in light of all the other evidence presented at the hearing. *Bailey*, 263 F.3d at 1029.

In his Objections, Buchanan points to the transcript of his *Marsden* hearing (which was held immediately after the motion to suppress was denied), as support. (Obj. at 23.)

10cv0423

There, he argued that defense counsel should be relieved because he was inadequately prepared.  Among other things, Buchanan cited defense counsel's failure to use the dispatch tapes at the hearing to show McIvor was lying.  (Lodgment No. 37 at 196-97.) In response, defense counsel stated that he had not gone into the tapes because "the other people and what they said to one another, unless it could be connected to McIvor and somehow it went into his calculus of stopping the car. . . I think it was irrelevant. . . I felt it was just going to frustrate and distract the court in trying to focus on the key issue, which is was there probable cause for McIvor to do the stop."  (*Id.* at 207.)   At the end of the hearing, the following exchange took place:

> BUCHANAN:     Wouldn't it have been possibly helpful for you to have seen that he lied or was mixed up about his facts?
>
> COURT:        It could have been, but I'm not sure it would have been shown in this particular hearing.  I'm going to deny the motion.

(Lodgment No. 27 at 208-09.)

Nothing in the *Marsden* hearing transcript suggests defense counsel's performance was deficient or that Buchanan was prejudiced as a result.  Defense counsel considered the tapes and made a reasonable tactical decision not to use them at the hearing, because they did not directly contradict McIvor's testimony regarding probable cause.  Moreover, as the Report found, even if the tapes had been used, the result of the hearing would not have been different.  There was probable cause based on the belief that Triste's life was in danger.  This belief was supported by the wiretap conversations and the observations made by McIvor.[15]  (Lodgment No. 27, vol. 3 at 128.)  An objectively reasonable stop

---

[15] Among other things, McIvor knew Buchanan was a "Big Homie" in the Mexican Mafia, and that "Triste" had disobeyed a direct order from Buchanan.  It was clear Buchanan was angry with Triste. Just before Buchanan went to meet with Chavez, and then Triste, he was heard on the wiretaps yelling at Triste through Chavez's phone "Well, fuck you, Triste! . . . I'm not fucking around either, punk. . . . Fucking sleazy, Sleazy ass Bitch."  (Lodgment No. 21, vol. 1 at 116-17.)

10cv0423

is not rendered illegal merely because the officer has an improper subjective motivation at the time of the stop.[16]  *Wren v. United States*, 517 U.S. 806, 810 (1996).

The state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law.  *See Williams*, 423 U.S. at 412-13; *see also Himes*, 336 F.3d at 853.  To the extent the Report reviews this claim de novo, it is **MODIFIED**.  In all other respects, Petitioner's Objections are **OVERRULED** and the Report is **ADOPTED**.

> ### e.    Failure to Adequately Investigate the Accuracy of Translations

Petitioner argues counsel was ineffective in failing to adequately investigate the accuracy of the translations of the wiretapped phone calls. (Pet. Attach. C at 30-31, ECF No. 40-1.)  The superior court reviewed this claim and found that Buchanan had not shown prejudice because the outcome would not have been different had Buchanan's version of the transcribed recordings been presented at trial. (Lodgment No. 11 at 21.)

As discussed above in section V(B)(2)(b) of this Order, Buchanan has not shown he was prejudiced by the purportedly inaccurate translations.  Therefore, even assuming the revised translations had been presented at trial by defense counsel, Buchanan has not shown that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687. As such, the state court's denial of the claim was not contrary to, or an unreasonable application of, clearly established law. *See Williams*, 423 U.S. at 412-13 The Court **MODIFIES** the Report to the extent it reviews the claims de novo, **OVERRULES** Petitioner's Objections and **ADOPTS** the Report in other respects. The claim is **DENIED**.

> ### f.    Failure to Adequately Investigate Records Related to Torres

---

[16]  At the hearing, the judge stated:

> I have to consider whether or not they had P.C. to stop this car.  And let's say that there had been no discussion of pretext, no discussion of a parolee at large, only the discussion that it appeared based on the wire taps that Mr. Buchanan, Mr. Brooks, Mr. Parraz were conspiring to take care of this other guy.  This other guy gets in the car. How could they not have topped the car?

(Lodgment No. 27, vol. 3 at 128.)

Buchanan argues trial counsel failed to adequately investigate Torres' prison disciplinary records, mental health records and parole records. (Pet. Attach. C at 30-31, ECF No. 40-1.) The superior court order addressed this claim and concluded that Buchanan failed to "make a prima facie showing that counsel's performance fell below the objectively reasonable levels. . . [and also] failed to make a prima facie showing of prejudice. (Lodgment No. 11 at 22.) As discussed above in section V(B)(4)(a) of this Order, Petitioner has not shown that these records would have been favorable to his defense. He merely speculates that these documents could have contained relevant impeachment evidence. *See James*, 24 F.3d 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.")

In addition, he has not shown he was prejudiced by any failure to introduce this evidence. Buchanan argues in his Objections that defense counsel's failure to obtain an updated parole detail record, and all other "information bearing on Torres' credibility . . .including [his] his prison record" was prejudicial because Torres was the prosecution's "star witness." (*See* Obj. at 43-44.) These arguments are just a rehash of those presented in the Petition and addressed in the Report. As discussed above, Torres was impeached at length with his prior criminal history, his violent behavior and obsession with Chavez, evidence of his mental health issues, and extensive drug use. (*See* Lodgment No. 32, vol. 8 at 762-85; *see also* Lodgment No. 35, vol. 11 at 1414-17.) As such, even assuming defense counsel presented additional evidence from Torres' parole records and mental health records, Buchanan has not established that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687. Accordingly, the Court **MODIFIES** the report to the extent it reviews the claims de novo, **OVERRULES** Petitioner's Objections, **ADOPTS** the Report's findings and conclusions and **DENIES** the claim.

/ / /

/ / /

/ / /

g.     *Failure to Make an Adequate Record Regarding Shackles*

Buchanan argues counsel failed to make a sufficient record that the jury saw Buchanan in shackles while being transported to the courtroom.  (Pet. Attach. C at 31, ECF No. 40-1.)  There is no reasoned state court decision addressing this claim.  As discussed above in sections V(B)(5)(a) and V(B)(6) of this Order, at one point during the trial, Parraz's attorney informed that court that Buchanan and Parraz believed that they had been seen by a juror while they were shackled and being escorted to court by the bailiff. (Lodgment No. 34, vol. 10 at 1214-15.)  The bailiff, however, told the court no jurors had seen the defendants being transported.  The judge noted that he would talk to security personnel in an effort to ensure that "something like that doesn't happen again, if it happened at all."  (*Id.* at 1215.)

As the Report properly concluded, it would be reasonable for an attorney to elect not to have the jurors questioned on the incident, so as to avoid drawing even more attention to the matter.  Second, it was not even established that the a juror had actually seen Buchanan in restraints.  As such, Buchanan has not shown defense counsel's performance was deficient, or that he was prejudiced as a result.  *See Strickland*, 466 U.S. at 687.  The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law.  *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

h.     *Failure to Obtain Buchanan's Gang Validation Packet*

Buchanan argues trial counsel was ineffective for failing to acquire his original gang validation packet from the California Department of Corrections and Rehabilitation.  (Pet. Attach. C at 31, ECF No. 40-1.)  The superior court denied this claim, concluding that  even assuming counsel's performance was unreasonable, Buchanan had not established prejudice, particularly in light of the numerous wiretapped recordings indicating he was a "Big Homie" in the Mexican Mafia.  (Lodgment No. 11 at 20.)  Buchanan does not raise any specific objection to the Report's conclusion as to

this claim.   As the Magistrate Judge noted, Buchanan has not shown how the information would have helped his case.   Moreover, it is not unreasonable for trial counsel to elect not to seek out evidence which would seemingly support the allegations that Buchanan was a high ranking member of the Mexican Mafia.   Buchanan has not shown defense counsel's performance was deficient, or that he was prejudiced as a result. *See Strickland*, 466 U.S. at 687.   The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law.   The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### i.   Failure to Hire Spanish Language Expert

Petitioner claims defense counsel was ineffective in failing to have an investigator named Esteban Hernandez review the wiretap translations for accuracy.   (Pet. Attach. C at 31-32, ECF No. 40-1.)   The superior court denied this claim, concluding that Petitioner had not shown prejudice because even if the revised translations had been introduced, it was not reasonably probable that the result would be different.   (Lodgment No. 11 at 21.) As discussed above in section V(B)(3)(b) of this Order, Buchanan has not shown the purported inaccuracies affected the outcome of his trial.   Even if the revised transcripts had been introduced by defense counsel, there is no reasonable probability that the outcome would have been different.   *Strickland*, 466 U.S. at 687.   The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law.   *See Williams*, 423 U.S. at 412-13. The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### j.   Failure to Call Methamphetamine Expert

Petitioner argues defense counsel was ineffective in failing to call Dr. Matthew Carroll to testify that a person who used methamphetamine as frequently as Torres would probably be "susceptible to paranoia and hallucinations." (Pet. Attach. C at 32, ECF No. 40-1.)   The superior court concluded that even assuming the Dr. Carroll was willing to

testify, Buchanan had not shown prejudice "in light of all the evidence regarding Petitioner's motive and intent in confronting Torres about Chavez." (Lodgment No. 11 at 20-21.) Buchanan does to raise any specific objection to the Report's conclusion as to this claim.

As the Magistrate Judge noted, defense counsel called another expert, Dr. Greg Michel, to testify about the effect of methamphetamine use on a person's perception of reality. (Lodgment No. 35, vol. 11 at 1404-11.) He stated that use similar to Torres' could result in paranoia and confusion. (*Id.* at 1414, 1417.) In light of Dr. Michel's testimony, Buchanan fails to show that counsel's performance was deficient performance or that he was prejudiced as a result of not calling Dr. Carroll to testify as to essentially the same thing. *See Strickland*, 466 U.S. at 687. The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 423 U.S. at 412-13. The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### k.    *Failure to Ask Buchanan to Testify*

Buchanan claims trial counsel was ineffective in failing to ask him to testify in his own defense, specifically that the guns and drugs found in his possession did not belong to him. (Attach. C at 32, ECF No. 40-1.) The superior court denied this claim, stating: "Petitioner complains he was not asked if he wanted to testify to present a defense of "justifiable possession" of a pistol and drugs. . . . Petitioner fails to make a prima facie showing that counsel's performance fell below and objectively reasonable levels. . . [and] Petitioner fails to make a prima facie showing of prejudice." (Lodgment No. 11 at 22.) Buchanan does not raise any specific objection to the Report's conclusion as to this claim.

As the Report properly stated, the decision whether to have a defendant testify is a tactical one, afforded great deference under *Strickland*. *Matylinsky v. Budge,* 577 F.3d 1083, 1097 (9th Cir. 2009). Had he testified, Buchanan would have been subject to cross-examination during which the jury would hear about his numerous prior

convictions. Based on this alone, Petitioner can not establish counsel's performance was unreasonable or that he was prejudiced as a result. *See Richter*, 131 S. Ct. at 788; *see also Matylinsky*, 577 F.3d at 1097 (finding no prejudice in defense counsel's decision not to call defendant, where the defendant would have been "subjected to damning cross-examination on his prior convictions"). The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. *See Williams*, 423 U.S. at 412-13. The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### *l.    Failure to Introduce Transcripts of Voice Mail Messages*

Petitioner next argues that defense counsel was ineffective in failing to use wiretaps of voice mail messages Torres left for Chavez in order to impeach Torres at trial. (Pet. Attach. C at 33, ECF No. 40-1.) The superior court denied this claim, stating Buchanan failed to establish that defense counsel's performance was deficient, or that he was prejudiced as a result. (Lodgment No. 11 at 22.) Buchanan does not make any specific objection to the Report's findings and conclusions as to this claim.

As the Report notes, the jury did hear one of the recordings Buchanan references, which was introduced by the prosecution. (Lodgment No. 31, vol. 7 at 705-06.) Buchanan has not shown defense counsel was unreasonable in declining to introduce the other recording, which contained references to Buchanan as "Big Homie" and in which Torres tells Chavez that Buchanan had ordered him to leave Chavez alone. *See Richter*, 131 S. Ct. at 788. The second recording was similar to the first, and Buchanan has not established he was prejudiced by defense counsel's failure to introduce it. The jury had already heard evidence of Torres' obsession with Chavez, his threatening behavior toward her, and his general temperament on August 25, 2004. The Report properly concludes that Buchanan has not shown how introduction of the tape would have changed the outcome of the trial. *See Strickland*, 466 U.S. at 687. The state court's denial of the claim was neither contrary to, nor an unreasonable application of, clearly established law. *Williams*, 423 U.S. at 412-13. The Court **MODIFIES** the Report to the

10cv0423

extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### m.   Failure to Call A Stalking Expert

Buchanan claims defense counsel should have called a stalking expert and presented other additional evidence that Torres was mentally unstable. (Pet. Attach. C at 33, ECF No. 40-1.)  The superior court denied this claim, concluding Buchanan had failed to establish counsel's performance was deficient, or that he was prejudiced as a result. (Lodgment No. 11 at 22.) As discussed above in section V(B)(4)(a), Torres was impeached at trial with evidence of his mental instability, his obsessive and violent behavior toward Chavez, his drug use, and other prior bad acts. (*See* Lodgment No. 32, vol. 8 at 762-85.)  Defense counsel's failure to introduce additional evidence to impeach Torres was neither deficient performance nor prejudicial. *Strickland*, 466 U.S. at 694. Buchanan is not entitled to relief.   *Williams*, 423 U.S. at 412-13.   The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### n.   Cumulative Effect

Finally, Buchanan claims he was deprived his right to effective of assistance of counsel by the cumulative effect of trial counsel's errors. (Pet. Attach. C at 33-35, ECF No. 40-1.)  As the Report concluded, because the Court has determined there is no merit to the ineffective assistance of counsel claims Buchanan has alleged, it follows there was no cumulative error. *Jackson*, 513 F.3d at 1085 (quoting *Whelchel*, 232 F.3d at 1212). Accordingly, the state court's silent denial of the claim was neither contrary to, nor an unreasonable application of clearly established law. *See Himes*, 336 F.3d at 853.  The Court **MODIFIES** the Report to the extent it reviews the claim de novo, **ADOPTS** it in all other respects, and **DENIES** the claim.

### 10.   Ineffective Assistance of Appellate Counsel (Claim Ten)

Petitioner argues he received ineffective assistance of appellate counsel due to his failure to raise one through seven and eleven in state court. (Pet. at 15, ECF No. 40; Pet.

Pet. Attach. C at 36-37, ECF No. 40-1.)   The last reasoned state court decision addressing this claim is that of the California Court of Appeal which denied it.  The court "adopt[ed] the analysis" of the superior court's order on the merits of the claims and concluded that Buchanan had not shown prejudice, based on the superior court's denial of the claims. (Lodgment No. 12 at 2.)  Buchanan raises no specific objection to the Report's findings and conclusions as to this claim.

The Report properly stated that it is clearly established that "[t]he proper standard for evaluating [a] claim that appellate counsel was ineffective . . . is that enunciated in *Strickland*."  *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)).  A petitioner must first show that his appellate counsel's performance fell below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  Specifically, Buchanan must show that counsel "unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith*, 528 U.S. at 285.  He must then show he was prejudiced by counsel's errors.  *Strickland*, 466 U.S. at 694.  To establish prejudice, he must demonstrate that he would have prevailed on appeal absent counsel's errors.  *Smith*, 528 U.S. at 285.  Because there is no merit to any of the claims Buchanan argues should have been raised by appellate counsel, as discussed in sections V(B)(1)-(B)(7) and V(B)(11) of this Order, Buchanan has not shown there is a reasonable probability that he would have prevailed on those claims had they been raised.  *Smith*, 428 U.S. at 285.  Therefore, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established law. *Williams*, 529 U.S. at 412-13.  The Court ADOPTS the findings and conclusions of the Report in full and DENIES the claim.

### 11.   *Restitution Fine (Claim Eleven)*

In his final claim, Buchanan argues the trial court improperly imposed a $10,000 restitution fine, in violation of this Eighth Amendment and due process rights.  (Pet. at 16, ECF No. 40; Pet. Attach. C at 39-40.)  The San Diego Superior Court denied this claim under state law, concluding Buchanan had not presented a compelling and

extraordinary reason for deleting the restitution fine. (Lodgment No. 11 at 22, citing Cal. Penal Code §1202.4(c)).  Because this Court has concluded this claim is not procedurally defaulted, the Report is **MODIFIED** to the extent it reviews the claim de novo.

The Report properly notes that to the extent Buchanan's challenge is based on state law, it is not cognizable. (Report at 84 n. 13 *citing Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  It goes on to conclude the fine is not "grossly disproportionate" under Eighth Amendment principles. Buchanan does not object to this portion of the Report. (*See generally*, Obj.)  This Court ADOPTS as MODIFIED the Report to the extent it suggests Buchanan's Eighth Amendment claim is cognizable under federal habeas corpus.  The Ninth Circuit has held that federal inmates cannot challenge a restitution order under 28 U.S.C. § 2255  because "restitution" does not affect the duration of a prisoner's custody. *See United States v. Theile*, 314 F.3d 399, 400 (9th Cir. 2002) (holding that "[c]laims or other types of relief, such as relief from a restitution order, cannot be brought in a § 2255 motion, whether or not the motion also contains cognizable claims for release from custody"); *see also Flores v. Hickman*, 533 F. Supp.2d 1068, 1085 (C.D. Cal. 2008) (applying *Thiele* to petition filed by state prisoner under 28 U.S.C. § 2254).  Accordingly, Buchanan is not entitled to relief.  The Court **ADOPTS** the Report as **MODIFIED**.

## VI.  EVIDENTIARY HEARING REQUEST

Buchanan requests an evidentiary hearing, alleging he is entitled to a hearing to resolve his claims. (*See* Mot. for Evid. Hrg., ECF No. 99; *see also* Traverse at 33, ECF No. 77.)  The Report concluded he was not entitled to a hearing pursuant to *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 1402 (2011).  There, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C.§ 2254(d)(1) – whether the state court determination was contrary to or an unreasonable application of established federal law – must be confined to the record that was before the state court. *Pinholster*, 131 S.Ct. at 1398.  The Court specifically found that the district court should not have held an evidentiary hearing

regarding Pinholster's claims of ineffective assistance of counsel until after the district court determined that the petition survived review under section 2254(d)(1). *Id.* at 1398; *see also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011).

In his Objections, Buchanan states that "sufficient factual basis exists in the trial transcripts and other records before the court to resolve the merits of Petitioner's claims, in Petitioner's favor.   If not, an evidentiary hearing is requested."   (Obj. at 16.) However, under *Pinholster*, Petitioner can only proceed to develop additional evidence in federal court if § 2254(d) is satisfied, and it has not been here for all the reasons discussed above. *Id.* at 1402.   Therefore, the Court **ADOPTS** the Report's findings and conclusions and **DENIES** Buchanan's motion for an evidentiary hearing.

### VII.  MOTION TO EXPAND THE RECORD

Buchanan has also filed a motion to expand the record pursuant to Rule 7 of the Rules Governing § 2254 cases. (Mot. to Expand Rec., ECF No. 117.)   In it he seeks several items, including the complete transcripts from the state court proceedings related to Rodney Brooks' case, records related to the "alleged threat" on Triste's life, wiretap evidence supporting McIvor's testimony regarding the stop, records related to a purported "state wiretap upon Ernesto Torres," and up to date parole detail record for Torres, surveillance tape of his car arriving at Chavez's house, Torres' prison records, phone interviews of Chavez by Detective Gutierrez, and "all declarations previously filed, in pro se . . . and any answers under oath by Petitioner to written interrogatories propounded by the judge, that may be deemed necessary." (*Id.* at 3-5.)   Many of these requests are also included in Petitioner's Objections to the Report.

The Court has discretion under Rule 7(b) of the habeas rules to order expansion of the record for good cause shown.  *See* Rule 7(b), Rules foll. 28 U.S.C. § 2254; *but see Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005) (holding that the provisions of 28 U.S.C. § 2244(e)(2) which restrict the ability of the Court to hold evidentiary hearings applies to Rule 7).  Under *Pinholster*, however, the Court is limited to facts presented to the state court.  *Pinholster*, 131 S.Ct. at 1398; *see also e.g.*,

*Runningeagle v. Ryan*, 686 F.3d 758, 773-74 (9th Cir. 2012) (concluding that, under *Pinholster*, petitioner was not entitled to discovery); *Peraza v. Campbell*, 462 Fed. Appx. 700, 701 (9th Cir. 2011) ("In summary, to the extent Peraza seeks to expand the record through discovery and an evidentiary hearing, beyond what was presented to the state court, we conclude that such relief is precluded by *Pinholster*.").   Because Petitioner has not satisfied § 2254(d) for the reasons discussed above, Buchanan's request to expand the record is **DENIED**.  *See Pinholster*, 131 S.Ct. At 1398.

## VIII.MOTION FOR FACTUAL DETERMINATION AND JUDICIAL NOTICE

On April 15, 2013, Petitioner submitted a request to file a motion "Motion for Specific Factual Determination," in which he explained that he attempted to submit the attached motion on November 14, 2012.  When he became concerned that the Court had not received the motion, he made several attempts to get verification from prison officials that he had submitted it for mailing. (Mot. at 3-4, 10, ECF No. 120.)   He was unsuccessful in obtaining information from the prison legal mail logs, because the log for that day could not be located. (*Id.* at 5, 10.) Having reviewed Petitioner's declaration and supporting documents, the Court finds good cause to GRANT Petitioner's request that the motion be filed and orders it be dated *nunc pro tunc* to November 14, 2012, under the mailbox rule.  *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (holding a pro se prisoner filing is dated from the date the prisoner delivers it to the prison authorities).

In the motion, Buchanan asks the Court to "make specific factual determination, in the interest of justice, of claims raised by Petitioner in grounds one, two, and three" of his Petition.  He also asks this Court to take judicial notice of his federal conviction in Case No. 05cr0199 BEN, which he is currently challenging in Case No. 10cv1135 BEN.  He claims that the same "prosecution team members" were involved in his federal trial and that this Court should make factual findings which could affect the proceedings in that case.

First, the majority of the allegations presented in Buchanan's request for "factual determinations" are simply a rehash of arguments already made in Buchanan's Petition and Objections – namely, the prosecutor presented false testimony about the circumstances of the car stop, the transcripts of wiretap phone conversations were improperly translated, trial counsel was ineffective, and the prosecutor withheld evidence. (*See* Decl. in Supp. of Motion at 11-14.)   All of these allegations were presented in the Petition and have been considered and discussed above.

To the extent Petitioner raises factual allegations and arguments in his motion for the first time, the Court need not consider them. *See United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000) (A district court may decline to consider new arguments raised for the first time in Objections to the Magistrate Judge's Report and Recommendation.). Nonetheless, the Court has fully reviewed and considered all the allegations contained in Buchanan's motion.  As discussed above, this must Court defer to a state court's factual findings and presumes those findings are correct unless a petitioner can rebut that presumption by clear and convincing evidence. *See Moses v. Payne*, 555 F.3d 742, 746 (9th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).  For all the reasons discussed above in this Order, Petitioner has failed to rebut the presumption of correctness. The motion for factual determinations is **DENIED**.

Buchanan's request for judicial notice is granted in part and denied in part.  A district court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *See Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007)).  However, a court may not take judicial notice of the veracity of any arguments or facts presented in the documents subject to judicial notice. *See Wyatt v. Terhune*, 315 F.3d 1108, 1114 n. 5 (9th Cir. 2003) (factual findings in one case ordinarily are not admissible for their truth in another case through judicial notice). To the extent Buchanan merely seeks for this Court to take judicial notice of the fact that he currently has another petition pending before this Court, stemming from a separate conviction in federal court, his request is

10cv0423

1  **GRANTED**. To the extent he seeks to have this Court take judicial notice of any

2  arguments contained in documents filed in that case, or any other facts related to that

3  case, his request is **DENIED**.

### IX. CERTIFICATE OF APPEALABILITY

5  Under AEDPA, a state prisoner seeking to appeal a district court's denial of a

6  habeas petition must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A).

7  The district court may issue a certificate of appealability if the petitioner has made a

8  substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To

9  satisfy this standard, a petitioner must show that "reasonable jurists would find the

10  district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

11  *McDaniel*, 529 U.S. 473, 484 (2000). In this case, Petitioner has not made a substantial

12  showing of the denial of a constitutional right. Accordingly, the Court *sua sponte*

13  DENIES a certificate of appealability.

### X. CONCLUSION

15  For all of the foregoing reasons, the Court **OVERRULES** Petitioner's Objections

16  and **ADOPTS** the Report as **MODIFIED**, and **DENIES** the Petition and Petitioner's

17  motion for an evidentiary hearing. In addition, the Court **DENIES** Petitioner's motion

18  to expand the record. The request for leave to file a motion for factual determination and

19  judicial notice is **GRANTED** and Clerk is directed to file the motion, nunc pro tunc, to

20  November 14, 2012. The request for factual determination is **DENIED**, and the request

21  for judicial notice is **GRANTED** in part and **DENIED** in part. The Court **DENIES** a

22  certificate of appealability.

23  **IT IS SO ORDERED.**

25  DATED: May 29, 2013

HON. GONZALO P. CURIEL
United States District Judge

10cv0423